UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X     10 CIV 0667 (SJF) (ARL)

SANDRA MORRISON-ALLEN,

                              Plaintiff,

                                                                               **NOTICE OF MOTION**

           -against-

JOHN MATTINGLY, COMMISSIONER OF ACS,
DEIDRE REYNOLDS, DIRECTOR OF MERCY FIRST
FOSTER CARE, JEANIE CAMBRIA MERCY FIRST
FOSTER CARE, STEWART ALTMAN, ESQ., LAW
GUARDIAN FOR CHILD, ERIN GALVIN, ESQ.,
RACHELLE SKUOL, ESQ. FOR ADMINISTRATION
FOR CHILDREN SERVICES, ANGELA CAMPBELL
CASEWORKER FOR ACS, DR. DEBRA ERNERSIO-
JENSSEN, ANDREA LOMAX CASEWORKER,
JOSEPH KASPER, ESQ., IRA ERAS, ESQ., JUDGE
LINDA TALLY, SISTERS OF MERCY MERCY FIRST
FOSTERCARE BOARDING HOMES, and JOHN DOE,

                              Defendants.

-------------------------------------------------------------------------X

**C O U N S E L O R S :**

           **PLEASE TAKE NOTICE**, that upon the affidavit of Warren S. Koster, Esq., sworn

to on the 2nd day of April, 2010, the memorandum of law in support dated April 2, 2010 and

upon all pleadings and proceedings heretofore had herein, defendants DEIDRE

REYNOLDS, JEANIE CAMBRIA,  ANDREA LOMAX, SISTERS OF MERCY MERCY

FIRST FOSTERCARE, and IRA ERAS, ESQ., by their attorneys Callan, Koster, Brady &

Brennan L.L.P., will move this Court before the Honorable Sandra J. Feuerstein at the

United States Courthouse located at 610 Federal Plaza, Central Islip, New York, for an

order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the action and each

and every claim in plaintiff's amended complaint for failure to state a claim upon which

CALLAN, KOSTER,
BRADY & BRENNAN, LLP
COUNSELORS AND
ATTORNEYS AT LAW
One Whitehall Street
New York, New York 10004
212-248-8800

relief may be granted, and for such other and further relief as this Honorable Court may deem just, proper and equitable.

Dated:      New York, New York
            April 2, 2010

                                        Respectfully submitted,

                                        Callan, Koster, Brady & Brennan, LLP

                            By:         _____
                                        Warren S. Koster (WSK-6753)
                                        Attorneys for Defendants
                                        DEIDRE REYNOLDS, JEANIE
                                         CAMBRIA, ANDREA LOMAX, SISTERS
                                        OF MERCY MERCY FIRST
                                        FOSTERCARE, and IRA ERAS
                                        One Whitehall Street, 10th Floor
                                        New York, New York 10004
                                        (212) 248-8800
                                        File Nos.: 910.154030; 400.146040

TO:     SANDRA MORRISON-ALLEN
        Plaintiff *Pro Se*
        371 First Place
        Uniondale, New York 11553

        CORPORATION COUNSEL
        Attorneys for Defendants
        *John Mattingly, Commissioner of ACS;*
        *Rachelle Skuol, Esq. for Administration*
        *Child Services; Angela Campbell,*
        *Caseworker for ACS*
        100 Church Street
        New York, New York 10007

        TRAUB LIEBERMAN STRAUS & SHREWSBURY LLP
        Attorneys for Defendant
        *Stewart Altman, Esq.*
        Mid-Westchester Executive Park
        Seven Skyline Drive
        Hawthorne, New York 10532

GARBARINI AND SCHER, P.C.
Attorneys for Defendant
*Erin Galvin, Esq.*
432 Park Avenue South
New York, New York 10016-8013

NEW YORK STATE OFFICE OF ATTORNEY GENERAL
Attorneys for Defendant
*Judge Linda Tally*
200 Old Country Road, Suite 460
Mineola, New York 11501

KAUFMAN BORGEEST & RYAN LLP
Attorneys for Defendant
*Dr. Debra Esernio-Jenssen*
120 Broadway, 14th Floor
New York, New York 10271

JOSEPH KASPER, ESQ.
Defendant
94-09 101st Avenue
Ozone Park, New York 11416

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

10 CIV 0667 (SJF) (ARL)

SANDRA MORRISON-ALLEN,

Plaintiff,

-against-

**AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS**

JOHN MATTINGLY, COMMISSIONER OF ACS, DEIDRE REYNOLDS, DIRECTOR OF MERCY FIRST FOSTER CARE, JEANIE CAMBRIA MERCY FIRST FOSTER CARE, STEWART ALTMAN, ESQ., LAW GUARDIAN FOR CHILD, ERIN GALVIN, ESQ., RACHELLE SKUOL, ESQ. FOR ADMINISTRATION FOR CHILDREN SERVICES, ANGELA CAMPBELL CASEWORKER FOR ACS, DR. DEBRA ERNERSIO-JENSSEN, ANDREA LOMAX CASEWORKER, JOSEPH KASPER, ESQ., IRA ERAS, ESQ., JUDGE LINDA TALLY, SISTERS OF MERCY MERCY FIRST FOSTERCARE BOARDING HOMES, and JOHN DOE,

Defendants.
-------------------------------------------------------------------------X

STATE OF NEW YORK   )
                                     ss.:
COUNTY OF NEW YORK )

WARREN S. KOSTER, being duly sworn, deposes and says:

1. I am a member of the law firm of Callan, Koster, Brady & Brennan, LLP, attorneys for defendants DEIDRE REYNOLDS ("Reynolds"), JEANIE CAMBRIA ("Cambria"),  ANDREA LOMAX ("Lomax"), SISTERS OF MERCY MERCY FIRST FOSTERCARE ("Mercy First"), and IRA ERAS, ESQ. ("Eras") in the above-entitled action. I am fully familiar with the facts and circumstances of this case based on a review of the file materials maintained in this office.

4

2. This affidavit is submitted in support of defendants Reynolds, Lomax, Cambria, Eras, and Mercy First's motion to dismiss in lieu of answer pursuant to Federal Rule of Civil Procedure 12(b)(6) to have the plaintiff's amended complaint dismissed with prejudice as to Reynolds, Lomax, Cambria, Eras, and Mercy First, and for such other and further relief as this Court may deem just and proper.

3. Plaintiff filed a complaint on or about February 16, 2010. Plaintiff filed an amended complaint on or about February 17, 2010. A copy of Plaintiff's Amended Complaint is annexed hereto as **Exhibit "A"**. In her amended complaint, the plaintiff *pro se* asserts the following causes of action: deprivation of constitutional rights pursuant to 42 U.S.C. § 1983; conspiracy to deprive civil rights pursuant to 42 U.S.C. § 1985; violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1961; malicious prosecution; and intentional infliction of emotional distress. Plaintiff seeks declaratory, injunctive and monetary relief.

4. Plaintiff's amended complaint alleges generally that "Mercy First...interfered with [her] rights" including her "rights to free speech, equal protection under the law, discrimination, access to the means for legal protection, [and] privacy." (Exhibit "A" at 1-2). Plaintiff also contends that the manner in which her visitation with her son is scheduled amounts to the infliction of cruel and unusual punishment by Mercy First. (Exhibit "A" at 12). Plaintiff further alleges that her son has been physically injured while under the care of Mercy First. (Exhibit "A" at 10-11). However, the allegations regarding Stephen Allen's injuries are currently the subject of a pending state court action in New York Supreme Court, Queens County, Index No. 1496/08.

5. With respect to Mr. Eras, plaintiff suggests that he attempted to deny her a fair

5

trial when he objected to plaintiff firing her court appointed attorney during Family Court proceedings. (Exhibit "A" at 13). Plaintiff's other allegations against Mr. Eras simply complain of his in-court advocacy requesting plaintiff undergo mental health treatment as a prerequisite for regaining custody over her son. (Exhibit "A" at 5, 10). Notably, plaintiff makes no specific allegations against Ms. Reynolds, Ms. Lomax, or Ms. Cambria; rather, they are simply noted in the caption and listed as parties in the body of the amended complaint. (Exhibit "A" at 8).

6. As discussed in the annexed Memorandum of Law, each and every cause of action asserted against Reynolds, Eras, Lomax, Cambria and Mercy First in the amended complaint should be dismissed for failure to state a cause of action upon which relief may be granted.

7. No prior application for the relief sought herein has been made to this or any other court or justice thereof.

**WHEREFORE**, it is respectfully requested that the instant Motion be granted in its entirety.

Dated: New York, New York
   April 2, 2010

WARREN S. KOSTER (WSK-6753)

Sworn to before me this
2nd day of April, 2010

Notary Public

Arlene Savarese
NOTARY PUBLIC, State of **New York**
No. 01SA6146568
Qualified in Richmond County
Term Expires: May 22, 20 _____

6

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK )

EILEEN GAMBINO, being duly sworn, deposes and says that:

I am not a party to the action, am over 18 years of age and am employed at One Whitehall Street, New York, New York.

On April 2, 2010, I served a true copy of the annexed **NOTICE OF MOTION AND AFFIDAVIT,** by mailing same in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address(es) of the party(s) listed below:

SANDRA MORRISON-ALLEN
Plaintiff *Pro Se*
371 First Place
Uniondale, New York 11553

CORPORATION COUNSEL
Attorneys for Defendants
*John Mattingly, Commissioner of ACS;*
*Rachelle Skuol, Esq. for Administration*
*Child Services; Angela Campbell,*
*Caseworker for ACS*
100 Church Street
New York, New York 10007

TRAUB LIEBERMAN STRAUS & SHREWSBURY LLP
Attorneys for Defendant
*Stewart Altman, Esq.*
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532

GARBARINI AND SCHER, P.C.
Attorneys for Defendant
*Erin Galvin, Esq.*
432 Park Avenue South
New York, New York 10016-8013

NEW YORK STATE OFFICE OF ATTORNEY GENERAL
Attorneys for Defendant
*Judge Linda Tally*
200 Old Country Road, Suite 460
Mineola, New York 11501

7

KAUFMAN BORGEEST & RYAN LLP
Attorneys for Defendant
*Dr. Debra Esernio-Jenssen*
120 Broadway, 14th Floor
New York, New York 10271

JOSEPH KASPER, ESQ.
Defendant
94-09 101st Avenue
Ozone Park, New York 11416

_____
EILEEN GAMBINO

Sworn to before me this
2nd day of April, 2010.

_____
Notary Public

Arlene Savarese
NOTARY PUBLIC, State of New York
No. 01SA6146568
Qualified in Richmond County
Term Expires: May 22, 20__

8

"A"

**CV 10 0667**

FILED
...RK'S OFFICE
US DISTRICT COURT E.D.N.Y

★   FEB 17 2010   ★

LONG ISLAND OFFICE

United States District Court
Eastern District of New York

------------------------------------------------------x

Sandra Morrison- Allen

Case No. :

Plaintiff,

Against

(S.F.) **AMENDED**
CIVIL RIGHTS COMPLAINT
JURY DEMAND

John Mattingly, Commissioner of ACS,    Deidre Reynolds Director
Mercy First Foster Care,    Jeanie Cambria Mercy First FosterCare,
Stewart Altman Law Guardian for Child,    Erin Galvin Esq.,
Rachelle Skuol Esq for Administration for Children Services,    Angella Campbell
Caseworker for ACS,    DR. Debra Ernersio-Jenssen,    Andrea Lomax caseworker,
Joseph Kasper Esq., Ira Eras Esq., Judge Linda Tally
SISTERS OF MERCY MERCY FIRST FOSTERCARE BOARDING HOMES,
JOHN DOE

**FEUERSTEIN, S**

**LINDSAY, M**

Defendants

------------------------------------------------------------------------x

PLAINTIFF IN THE ABOVE CAPTIONED ACTION ALLEGES THE FOLLOWING
COMPLAINTS UNDER PENALTIES OF PERJURY, AND BEING DULY SWORN
DEPOSES AND STATES THE FOLLOWING:

1. This is a complaint for Money Damages, Injunctive and Declaratory Relief pursuant to
Title 42 U.S.C 1983 et seq. and Rico 18 USC 1961 et seq and state common law claims
for Plaintiff having been deprived of a series of due process laws found in the Fifth and
Fourteenth Amendment to the U.S. Constitution.

Though I am a pro se litigant I know that all levels of government are prohibited
from arbitrarily, capriciously, and unfairly depriving me of my Constitutional Rights to Life,
Liberty and Property as stated in the Bill of Rights.

The Due Process Clause of the Fifth Amendment states that I shall not be deprived of the
rights which I will detail in this complaint, without due process of law. I understand that this
clause limits the powers of the states, rather than that of the powers of the Federal
Government.

My complaint is against the State of New York, the Governor of the state of New York for
failure to properly supervise his underlings, the officials of the Administration of Child
Protective Services, in their personal and administrative capacities, the foster care agency
Mercy First, including all members of the organization from the administrative division to

1

every member of the staff who interfered with my rights and who participated in damaging, defaming and libeling me as well all others listed as defendants in this complaint.

I accuse all parties named of consciously, actively, with knowledge and intent to conspire to deprive me of my Substantive Due Process Rights as well as of my Procedural Due Process Rights.

I assert that my rights to free speech, equal protection under the law, discrimination, access to the means for legal protection, privacy were kept from me by active collusion on the part of each of my attorneys, Mercy First staff, both foster care personnel and directly in the person of Ira Eras Esq..

Mr. Eras has personally taken a vendetta like stance to preclude my rights in multiple venues. Judges Rea Friedman and Linda Tally have acted with Judicial prejudice, impropriety, active interference with my ability to defend myself, by causing me to be unavailable for several court hearings because of causing me to be jailed, hospitalized and not notified of hearings.

The evidence of these charges will be elucidated by complaint and document exhibits, where I am able to display documents as these judges have precluded me from obtaining transcripts, have failed to notify me of court appearances and have failed to sign orders which they articulated within the court but are unable to be appealed because of the Judges intentional action regarding not signing orders directed by them.

I am aware that Eleventh Amendment Immunity affords protection to state actors, judges and administrative bodies. I intend to argue that these individuals whom I allege have violated critical constitutional rights as described in the 5th and 14th Amendments to the Constitution, should be deprived of Eleventh Amendment Immunity as so stated in **** as violations of Constitutional rights mitigate against defense by Constitutional Amendments.

Further, Federal law is controlling when it applies to all matters which involve discrimination in any form. As the State Family Court accepts Federal funding for many programs that impact upon and programs that would include my adjudication in the Family Court, the state cannot claim any immunity, sovereign immunity, absolute judicial immunity, qualified immunity, or any other immunities. Given that the state accepts federal funding for such programs as child abuse prevention and that the prohibition against discrimination is implicit in all grants, the fundamental argument is that the tax payer must be protected against fraud and discrimination through state policy or actions see110 cong. Rec.6544(1964)(Sen. Humphrey.,also Dakota v. Dole, 483 U.S. 203, 209 – 211(1987).

Further, disqualification of Judges Friedman and Tally should have been required as per the decision of the Supreme Court in Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994). This decision held that "Disqualification is required if an objective observer would entertain reasonable questions about the judges impartiality. If a judges attitude or state of mind leads a detached

2

observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." Numerous complaints were issued to the Administration of the Courts and various judicial conduct authorities as to the non judicial demeanor of Judges Friedman and Tally. **EXHIBIT 1**

A judge must disqualify themselves if they are in violation of the Due Process Clause of the U.S. Constitution. A judge must be free from bias or prejudice, which is based on the Due Process Clause. United States v. Sciuto, 531 F.2d 842,845 (7th Cir.1974).

It would be impossible for any fair or impartial observer to conclude that Judge Friedman did not treat me with malice and partiality as will be noted in the description of the events which elucidate the facts of her negatively biased treatment toward me. Judge Friedman accused me of participating in a "prayer circle" in the vestibule of the court. I was the only individual seized by the court room police, taken to jail in the basement of the court room without any notice to my attorney and then ordered into fourteen days of psychiatric hospitalization at Elmhurst General Hospital. As a result of the hospitalization, I was forced to be absent from a court proceeding which took place without me and resulted in the seizure by ACS of my two children, Stephen Allen Jr., age and then embarrassingly seizing my sixteen year old daughter, Tasha Timol from her private school.

I was deprived of the right to confront my accuser, Judge Friedman. (Idaho v. Wright) *Idaho v. Wright 497 U.S. 805(1990)* holds that a defendant has a right to confront their accuser. I was the only individual seized of the group of women and men who were quietly holding hands and praying, silently, together, in the waiting room vestibule of the Queens Family Court, prior to a hearing. I was singled out for especially abusive treatment and not allowed to defend myself in the hearing at which I was called to be present. No other parent in the group present with me, holding hands was seized by court officers who took me from the vestibule, not allowing me to contact my attorney, Mr. Calendar so that he had no idea as to where I had gone. No person in the group around me knew where I was taken.

Once seized, my children were without their mother.( Stephen Allen Sr..was unlawfully and strategically deported to Jamaica, West Indies just before he was about to testify at the abuse hearing.)

My children were treated deplorably at the time of their seizure on Nov. 9th, 2005 (refer to Affidavit of Tasha Timol) **EXHIBIT II**... My daughter described the indifferent, inhuman treatment to which she and my son were subject by ACS staff. Once my children were seized by ACS I was not allowed any contact with Stephen for the next ten months.

The actions taken by ACS, the Queens Prosecutor for ACS, the Judges were thoroughly in violation of the guidelines of Federal Legislation of the Adoption and Safe Families Act of 1997 ASFA and CAPTA. Probable cause was artificially manufactured by my seizure which then created an inability to defend myself in court, as per my absence from court .

3

The event described in which I was fraudulently seized without cause  was not the only time that I was accused of wrong doing, seized, jailed, caused to be unable to be present at a court hearing 1/19/2005 I was prevented from being present at a court hearing by Mercy First Social Work staff through their false accusations regarding kidnapping my young daughter Tasha when she came to my car to leave large Christmas gifts and bags  instead of travelling on the lonely ,dark Far Rockaway  crime ridden community to a train station by Mercy First location with.**EXHIBIT III**

I assert in this initial statement that coercive psychiatry was used to vilify me, impeach my credibility, sanity, judgment, which then provided the probable cause basis for the ability of all defendants named to justify the numerous egregious, unlawful acts perpetrated against me.  Coercive psychiatry I submit is an incursion of my 5th amendment rights in numerous venues. The incursion of my rights through interpretation of my unconscious mind is tantamount to self incrimination via the ability of any credentialed mental health professional to make interpretations, conclusions, risk assessments which are unfounded because the social sciences are "soft sciences" not based in medical, scientific certainty or experiment able to be replicated, subject to reliable, credible risk assessment or proven through hard medical data. I was not subject to blood tests, MRI's, PET Scans or Neurological examination that stated that I had a brain tumor, but simply toxic pronouncements initiated by judges and lawyers to mental health staff at a hospital who did not have the ethical fiber to rise up against the autocracy of the court.

The hospital has available attorneys from the Department of Mental Hygiene. Israel Flamenbaum, attorney for the Dept. of Mental Hygiene was unable to free from the grip of the Order signed by Judge Rea Friedman. When my attorney, Mr. Callendar came to Elmhurst General Hospital to see me, he was not allowed any access to me until his third attempt.

In essence the mental health professional/evaluator becomes an anti-court. Within a psychiatric hospital setting there is no objective/technical reporting system, no court reporter, no recording audio and visually of sessions or evaluation meetings, no cross examination, confrontation, choice by the client of the evaluator, no confidentiality, no swearing in. There is no check for the evaluator's counter transference or the weight of evaluator's desire to act in accord with the desires of the court as the affiliation process is not measured.

All HIPPA rights are discarded in favor of the rights of the court to prosecute me for crimes which never occurred and evidence that was never able to be presented.NYU Medical Report **EXHIBIT IV** was not submitted , Mr Stephen AllenSr. testimony was not taken,(video or otherwise) neither was Detective Scott Smith of the QueensChild Victim unit. Yet there was an abuse finding made.

On November 9th 2005 if I was the subject of a criminal investigation I would have had the benefit of a Miranda hearing, offered even to the terrorists who attacked the World Trade Center buildings. Instead, I as a mother have been tormented by attorneys and Judges who have acted as supervisory staff to those who are supposed to be mental health professionals.

4

Mr. Eras, attorney for Mercy First Foster Boarding Home, where my child has been secreted from me, and Judge Tally stand as supervising mental health experts; in any other venue than the Family Court, they would be accused of practicing a profession for which they were not licensed.

Mr. Eras has terrorized me by demanding that I admit to charges that I adamantly deny. If I was in a criminal venue I would have rights of defense, free speech, or the right not to speak. Instead I am forced to be seen by mental health professionals chosen by the court, who make their living via court referrals and live by the good graces of the court.

My personal psychotherapy records have been subpoenaed 11/05/2009 and handed over to the court and to Mr. Eras. Mr. Eras asserts that I did not engage in psychotherapy or other programs mandated by Mercy First, yet he subpoenas records that indicate that I did engage in all areas of psychotherapy, parenting classes, anger management demanded by the court. Mr. Eras asserts that I must undergo "therapy" through Mercy First programs.

I assert that given my highly antagonistic relationship with Mercy First, being forced to engage in any form of "therapeutic" dealings with them constitutes an attempt at mind control, brain washing, incursions into my free speech and freedom of thought.

My assertions that all member of the staff of Mercy First have injured me, deprived me of my ability to visit with my child and willfully asserted their control with the accomplished task of keeping me from having my son returned to me, as well as willfully covering injuries which I can prove have occurred in Mercy First foster care.EXHIBITS✔

I assert and will detail specifically the facts evidencing the failure of due process as to the rights which were abrogated which have deprived me of my ability to defend myself and to defend my child.

I assert and will detail with evidence of documents and witnesses the truth and accuracy of my claims.

I have been deprived of procedural due process through the inability to have the right to notice of hearings exhibit*, the right to be present at testimony*, the right to confront my accuser*. I will present the evidence of these statements as attachments to this document and will offer case law with regard to each of these allegations as I describe the concurrent events which transpired that deprived me of my rights.

I wish to repeat that proceedings which began against me by ACS and subsequently Mercy First Foster Boarding Home, originally in 2001, proceeding through the present time are actions which are totally and completely in violation of all time frames and standards set by ASFA and CAPTA. Given the events which I will enumerate are the subject of damages which I wish to have remedied by the immediate release of my son Stephen Allen Jr..

Stephen Allen Jr. has himself gone through the most unimaginably horrific physical and emotional abuse at the hands of ACS and Mercy First. I allege that it is for the reasons of covering abuse, as well as extensive financial gain that my child has been kept away from me and that my due process rights have been so extensively violated.

Coercive psychiatry has been implemented and manipulated to distort, disenfranchise and destroy my credibility and further undermine my substantive and procedural due process rights.

THIS COURT HAS JURISDICTION PURSUANT TO:

   a.  42 U.S.C. 1983, 1985, 1986,, 1988; 28 U.S.C. 1331, 1343(1), (2), (3) AND (4);

   B. There is no diversity as Plaintiff lives in Long Island, New York and all Defendants reside and work in New York , Brooklyn,Queens and Long Island.

   C. This court has pendant Jurisdiction pursuant to 28 U.S.C. 1367(a) for the breaches of duty and other common law offenses asserted herein.

  2.  Venue is proper here because Sandra Morrison Allen is a resident of Long Island, pays taxes on her property in Long Island and feels that this jurisdiction is where her son should be returned to his rightful home and family.

   a. Venue is based on the Location of Parties and Events

   b. All parties work within the Judicial district

   c. This court has pendant Jurisdiction pursuant to 28 U.S.C. 1367(a) for the multiple breaches of duty and other state common law offenses asserted herein.

5 . Venue is proper in Long Island, New York, pursuant to 28 USC 1391. 28 USC 1391 in pertinent part reads as follows:

  6.  28 USC 1391, Venue generally:

   a.  Mrs. Allen, the Plaintiff lives on Long Island
   b.  Events leading to the incarceration of Mrs. Allen and seizure of her children took place on Long Island
   c.  Mercy First has it's administrative offices on Long Island

    d.  Personal and Corporate jurisdiction are compatible in this jurisdiction

7.  Venue is proper in Long Island, New York under 28 USC1391 because both family residence and the business of Mercy First Boarding Home resides on Long Island

## PARTIES

8.  Specific defendants in the paragraphs listing the causes of action

All parties are over the age of 21 – other than Stephen Allen Jr. who is the subject and object of this cause of action. The due process violations, coercive psychiatry issues, free thought and speech issues that make-up the Federal complaint emanate from the life and death struggle to free my child from the life threatening grip of a virulently dangerous organization. This organization will uninhibitedly implement multiple forms of trickery, lies, abuse, collusion, coercion, conspiracy between staff members and the Plaintiff to accomplish the goals established to fund the existence
    of the corporation and the enrichment of its members.

10. I, Sandra Geralds Morrison Allen am the mother of Stephen Allen Jr. my son. I am the Plaintiff in this action.

11. I reside in Long Island New York at 371 1st Place,

12. While I am bringing this complaint myself as the Plaintiff, I am not the only aggrieved party in this action.

13. I am entitled to fees pursuant to RICO 18 USC 1961 et. seq.

14. I am entitled to triple damages pursuant to RICO.

15. I am entitled to punitive damages from each of the parties charged

16. Governor Patterson

17. John Mattingly Commissioner of ACS 150  William Street  New  York

18. Mercy First Foster Boarding Home /Sisters of Mercy First Foster Boarding Home named as a person in it's entirety as an organization – given the current supreme court decision – corporate officers to be served

a. Director of Mercy First Foster Care BH- Jeanie Cambria 6301 12th Avenue Brooklyn New York 11213

Director of Mercy First Foster Care BH – Deidre Reynolds 230 Beach 102nd Street
Far Rockaway New York N.Y 11694
b. Andrea Lomax caseworker c/o Mercy First Foster Care
c. Angella Campbell caseworker ACS Field Office 165-15 Archer Avenue Jamaica New York 11435

19. Judge Rea Friedman – retired address unknown

20. Judge Linda Tally Queens Family Court Part 12 165-05 Jamaica Avenue N.Y 11435

21. Administration for Children Services Prosecutor-Rachelle Skuol Esq., 150 William Street New York 110038

25. Andrea Lomax
adress unknown

22. Stuart Altman Esq. Law Guardian for Stephen Allen Jr
220 Mineola Blvd Suite #7
Mineola New York 11501

26. Ira Eras.
c/o Warren&Warren
185 Montague St.
Bklyn 12331

23. Errin Galvin – Law Guardian for Tasha Timal
153-01 Jamaica Avenue Legal Aid Society

27. Dr Debra Ersernio-Jensen
410 Lakeville Road
Suite 3 108
New Hyde Park

24. Joseph Kasper Esq
94-09 101st Avenue
Ozone Park N.Y. 11416.

## RELIEF SOUGHT

A declaration that Stephen Allen Jr. and Sandra Morrison-Allen constitutional rights have been violated .* Seeking $10 million Dollars for each charge alleged.,* Plaintiff also seeks Injunctive relief *Plaintiff demand the immediate return of child Stephen Allen Jr. to the care and custody of his mother.
* Seeking expungement of my file and mental health record.* Seeking compensatory damages for the emotional and mental distress inflicted upon the plaintiff throughout the 10 years of this case.
*Requesting a special prosecutor to investigate the RICO criminal action of all parties mentioned as I have further evidence to produce. ·

8

## NON PARTIES

25. Stephen Allen Sr. – Father of Stephen Allen Jr.

26. Tasha Timol – Sister of Stephen Allen Jr. – former detainee of Mercy First Foster Boarding Home, witness and future litigant

27. Mavis Morrison  and Mavis Allen(out of State Res.)  Grand mothers of Stephen Allen Jr.

28. Bruce and Dwayne Allen uncles to Stephen Allen Jr

29. Stephanie and Elizabeth Allen sisters of Stephen Allen Jr. (Out of State Res).

30. Richard,Patrick, Clive, Robert  Morrison uncles to Stephen Allen Jr.

31. Monica, Basil, Sydney Buchanan aunt and uncle to Stephen Allen Jr.,,

## BACKGROUND

I am Sandra  Morrison Allen, the mother of Stephen Allen Jr.. I am the subject of a TERMINATION OF PARENTAL RIGHTS HEARING brought against me  by ACS and Mercy First Foster Boarding Home.

I am a PRO SE LITIGANT. While I have been appointed a "legal consultant" I consider him an individual whose placement is no more than window dressing as his presence has not only been useless but harmful as he is able to speak with and correspond with the court and its minions whom I consider adversaries, biased and entrenched I their corruption, avarice, commitment to coercive action against me and the aid to the cover-up of the illegal/criminal activities conducted between ACS, Court and Mercy First employees.

The intention to place my child for adoption and to separate him from his home, family, birth right, culture ;Stephen has dual citizenship as a Jamaican Citizen and a U.S. Citizen and as such the Jamaican Government and Jamaican Embassy has an interest in this case and considers the violation of Stephen's rights to be a violation of his rights as a Jamaican Citizen, now being "legally kidnapped" by the  United States Government.

I have employed attorneys, who have betrayed their fiduciary duty. I have dealt with mental health professionals who have betrayed their medical, psychiatric, ethical responsibilities, training for money and influence as will be proven if I am given an opportunity to bring the case before a fair and impartial court. Complaints are being filed with the medical board of NY, Dept. of Professional Discipline against physicians at Elmhurst General Hospital and Psychologist Dr. Frank whom has filed purposefully false evaluations of me, and now intend to file an evaluation of me with the court's permission without having seen me or examined me. ordered 5/2009

I assert, as a beginning and partial argument that my due process rights, both substantive and procedural have not only been denied but have been corrupted, mutilated,and

9

distorted. I believe that the legal nomenclature used to describe the perversion of evidence used against me is "fruit of the poison tree". In my situation, I would suggest that the correct terminology would be "fruit of the poison orchard" which has poisoned the well of legal substantive and procedural due process.

I beg forgiveness of the court for any and all incorrect writing style, form citation and any and all further mistakes that I have made, meaning no disrespect to this court. I am a pro se litigant and have limited resources, time and education to combat the vast resources of the State and of Mercy First Boarding Home.

I wish to state that I do believe that a commitment to legality is present in our government and it's programs and the organization of the court system and its programs is well intentioned and has the capacity for great good and preventing great harm. However, I do also know that human error and frailty are at the core of the violations which have been unchecked in their capacity to have reached the level at which I now must myself seek redress from the harm committed against me, my child and loved one's who seek to protect him against the harm being inflicted by all who are now named and will be named in future suits.

I wish to begin with a case law decision which to my understanding is relevant as to foundation for the case I bring for substantive and due process violations.
The Supreme Court in *Goldberg* v. *Kelly 397* U.S. *254* recognized that public assistance recipients were entitled to certain due process rights. I wish to focus on how the decisions of Goldberg v. Kelly and the case law on due process which has followed has very specific implications and relevance to the violations of due process, both substantive and procedural, which are central to my case. The Goldberg/Kelly case concerned itself with largely broad procedural issues and public policy and did not show interest in the exceptions to program idiosyncrasies.

My case is relevant to because the state and Mercy First have chosen to violate the guidelines of ASFA and CAPTA as to timing, and constant changes in permanency hearing goals. Mr. Eras has focused on forcing me to bend to the will of Mr. Eras, who has dictated time and again what my mental health parameters for certification of my mental health should be . .. My family has been intruded upon by ACS since 2001, shortly after the birth of my son and an accident caused an injury which caused us to take him to a pediatrician. **(... FOLLOWING CONSEQUENCES INVOLVING DR. DEBRA ERSENIO -JENSEN CURRENTLY A DEFENDANT BEFORE FEDERAL COURT*Estiverne v. Jenssen 2008 wl 2987041 ( E.D.N.Y. July 31,2008) (,2008)

My son has been injured physically in the exclusive care and custody of Mercy First Fostercare. I have medical records noted from billing to my private insurance by hospitals that my child suffered a fractured skull and a fractured collar bone. (**EXHIBIT** ...**VI**....)Strange bites have been seen on his body7/2006, redness of the child nipples, bruises to his ankles seen 6/2006,injury marks on his ears, showed pain in walking in 1/2007 walked with a limp, unexplained missing four front teeth3/2008, black and blue mark on side of face observed at visit.

10

I know that my son has suffered other injuries and has been psychiatrically medicated( against my will) **EXHIBIT VII** to keep him from being able to speak to his family when we are allowed to visit him under the strict scrutiny of guards – not therapeutic/supportive therapists but rude, hostile, vicious supervisory guards .To date the agency refuses to release all medical and psychological treatment information to the mother.

Mercy First staff reverses roles of abuser/persecutor and victim/protector, accusing his family of abuse and claiming the role of protector for themselves though if truth is revealed their destruction of years of my child's life, development, learning have been shattered, his psyche scarred and our hearts broken.

The Rules of Due process:

1. An unbiased tribunal  - I was jailed and hospitalized for no reason by Judge Friedman, deprived of multiple rights by Judge Tally – – – no notification of hearings – and refusal to write order –Judge Tally issued instruction to the Court's intake and Chief Clerk not to accept any documents for filing with the court from the respondent/mother –blocking pro se from building a case for appeal.  **EXHIBIT** VIII
2. Notice of proposed actions and grounds asserted  - exhibit – deprived of notices, hearings taken place w/o my presence or that of my husband , Stephen Allen Jr's father
3. Opportunity to present evidence, including why the proposed action should not be taken
4. The right to present evidence, including the right to call witnesses
5. The right to know opposition evidence (I have been precluded from seeing transcripts, having access to my attorney Joseph Kasper's file, psychiatric files, psychiatric reports, (exhibits To date Mr.Kasper has not given file to the Pro se litigant even though Judge Tally ordered him to turn over file to 18b March 2009.
6. The right to cross- examine adverse witnesses. – My attorney, Joseph Kasper did not enter evidence, call witnesses on my behalf or enter reports on my behalf.
7. A decision based exclusively on the evidence presented. – Evidence was suppressed. Evidence was entered that was hearsay or lies. I was/am subject to constant threats, coercion – surrounded by court security in court for no reason. I must constantly be accompanied by witnesses for my protection to prepare affidavits for the truth of events taking place or witnesses such as diplomat from the Jamaican Consulate were specifically locked out of the court room.done on 9/29/2009
8. Opportunity to be represented by counsel. – My counsel is a minion of the state. He in no way represents me or is cooperative to my interests. .....
9. Requirement that the tribunal prepare a record of the evidence presented. – Affidavit stating that the permanency hearing record in Referee Craig Ramseur courtroom was erased in the course of the hearing . Done on 08/03/2009
10. Requirement that the tribunal prepare written findings of fact and reason for its decision. All of the above due process reasons have been multiply violated. I have been subject to violation, coercion, false imprisonment and numerous other incursions of my rights which will be discussed in the listing of my causes of action.

11

## CAUSES OF ACTION

18 USC 1512 Predicate RICO crime – erasing tapes at an administrative hearing to exclude testimony – Plaintiff………. stands accused of this crime witnessed

(1) alters, destroys, mutilates, or conceals a record, document or other object, or attempts to do so, with intent to impair the objects integrity or availability for use in an official proceeding….

18 USC1513(B) ALLEGED AGAINST EACH PLAINTIFF NAMED IN THE  CAPTION OF THIS CASE – Whomever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person or threatens to do so with the intent to retaliate against any person:

(1) the attendance of a witness or party at an official proceeding (court proceedings, administrative hearings, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or
(2) any information relating to the commission or possible commission of a Federal offense (child Abuse)…. Or attempts to do so, shall be fined under this title or imprisoned for not more than ten years or both (Exhibit – re: threats to a mandated reporter reporting child abuse related to Stephen Allen Jr.)*

Defendants all violated section 1983, 1985, of the Federal Civil Rights Law

Rico: Obstruction of Justice and interference with Commerce – false charges of child abuse, unlawful imprisonment on two occasions, psychiatric hospitalization has caused client to loose respect at place of employment, has caused her to be unemployable in the future, in numerous venues due to incorporation in the ACS Child Abuse Registry

Infliction of Cruel and Unusual Punishment – though there are multiple examples to describe and elucidate  this charge, client has been placed in a position to expect visitation with her son at the Foster Boarding Center of Mercy First. The Plaintiff  lives on Long Island and must drive nearly two hours to reach the Far Rockaway visitation center, and then two hours to return to Long Island. On numerous occasions the child has not been produced for visitation or is extremely late for visitation. He arrives to visitation – as per this winter with no hat or gloves in freezing cold weather. This overt provocation of negligence in care of the child is interpreted as a torment to the family who repeatedly supplies clothing, toys, movies, books to the child. Mercy First staff have repeatedly denied the child objects brought to him by the family.
*The parent denied right to see or communicate with child Stephen Allen Jr. for 11 months.
*Parents denied right to any pictures of Stephen Allen Jr. since removal.

12

*Mother denied request of Stephen Allen Jr. presence at his mother's Hofstra university graduation May 2009.

*Denying the mother of the requested medical, dental, school and , psychological records of Stephen Allen JR.

*Parent inquest ignored as to why 5year old child placed on psychiatric drug no explanation given as to why still holding child even though he expresses his desire to go home

*Denial of other family/sibling out of State family from visiting Stephen Allen Jr.(his sisters Christmas 2007

*Cancelling visit of the mother for singing religious song to Stephen Allen Jr, at the visit

Within this vein of description of CRUEL AND UNUSUAL PUNISHMENT – the child's father has been denied even a picture of his son over the years of Stephen Allen Jr's detention and the family is not allowed to photograph the child with family members upon visitation.

Denial of Right to Due Process and Equal Protection-The fact that Stephen was born to foreigners does not justify continued fostercare without a fair or proper hearing.The Equal Protection Clause require that the due process of aliens be respected. A strong foreign accent should not be used to judge and insult the family .Cultural differences should not be means of penalizing this family and this child.

Denial of Right to a Fair Trial – the weight of evidence in trial was determined by ACS in conjunction with Mercy First attorney Ira Eras who objected to the client firing attorney Joseph Kasper, giving rise to the inescapable conclusion of an unholy alliance between Mr. Kasper esq., Stuart Altman esq., and Ira Eras, ACS attorneys, all who supported Mr.
Kasper being retained as per insistence of the Judge, to represent Mrs. Allen, when Mr. Kasper hampered the defense of Mrs. Allen at every phase of the litigation.
To date the publicly paid Law Guardian attorney for the child has failed to report to the court of the injuries Stephen Allen Jr. sustained while in Mercy First Foster Care especially the skull fracture and broken collarbone that had him rushed from Jamaica Hospital to Cornell University Hospital ICU.

Denial of the Right to a Fair Trial

Denial of the Right to free speech

Denial of the Right against Self Incrimination (through the use of Coercive psychiatry/extortion/manipulation, coercion)

Conspiracy to deprive Civil Rights

1983 Placed in Double Jeopardy

Malicious Prosecution

Intentional Infliction of Emotional Distress

13

Denial of right to practice Religion--
The Defendants all violated my Constitutional Rights as stated within, taunted me and repeatedly acted as if I had no recourse against them. I was constantly treated as if my only recourse was to be ruled by their arbitrary and capricious directives and threats that I must partake in their multiple courses of therapy, parenting classes, anger management. These programs whose credibility, professionalism, are questionable at best, are all given for purposes of the enrichment of Mercy First corporation who has at it's disposal a captive audience.

Further, cooperation with Mercy First/ACS cruel, sadistic treatment toward me has been perpetuated in exchange for my having any access to my son. The fear of not at least in some measure, cooperating with Mercy First/ACS staff made me aware that I would be deprived of any contact with my child, who is held hostage to their greed, avarice, false charges against me.

I am forced to stand by passively, watching my child's physical/emotional/intellectual health deprived as he is kept from living in a physically, financially comfortable, safe environment with responsible and loving parents Stephen Allen's strong interest in returning home tells that there is a disservice of his best interest.. Hence, I am forced to resorting to filing this Federal Complaint herein.


WHEREFORE, your plaintiff ask that the relief requested in the Complaint be granted in its entirety and any other relief that is just and reasonable.


Sandra  Morrison -Allen

Notary_____

NICKOLAS BERG
Notary Public, State of New York
No. 5003096
Qualified in Nassau County
Commission Expires Oct. 13,  2010

2/16/10

14





WILLIAM F. SCARBOROUGH
Assemblyman 29th District

THE ASSEMBLY
STATE OF NEW YORK
ALBANY

CHAIRMAN
Committee on Children and Families

COMMITTEES
Banking
Corporations, Authorities and Commission
Correction
Ways and Means

September 21, 2009

Hon. Joan B. Carey
Deputy Chief Administrative Judge for New York City Courts
25 Beaver Street
New York, NY 10004

Re:   Stephen Allen
Case#  B19765/08
        NN14666/01
        Queens Family Court

Dear Judge Carey,

I am writing you in regard to the above case, which has been in Family Court since 2001.
Stephen Allen's mother, Sandra Morrison (Gerald) came to me three years ago, in my
capacity as Chair of the Assembly's Committee on Children and Families, and I have
watched with concern as the case continues to drag on unresolved.
        There are undoubtedly, many complexities to this case, and I am sure that Judge
Linda Talley and other parties to the case have sought to move forward in good faith
towards a resolution. However, there are critical unresolved or unexplained issues
outstanding, and Ms. Morrison's parental rights are at risk of being terminated in these
procedures:

- Mercy First, the voluntary agency administering Stephen's case, has sought to
terminate Mrs. Morrison's parental right on grounds that she has refused to
complete parenting classes and would not cooperate in a psychiatric examination.
I have seen certifications from a very reputable doctor in my community attesting
that Ms. Morrison had completed parenting classes, which for some reason were
rejected by the agency and the court. Mrs. Morrison is suing Mercy First because
of alleged injuries to Stephen while in foster care and other issues and thus did not
wish to be examined by their psychiatrist. Kings County Hospital Psychiatric
Unit had agreed to do the examination but their efforts were hindered because her
last private lawyer, Joseph Kasper of Queens, refused to release her records
because he claimed Mrs. Morrison owed him money.
- Mrs. Morrison has sued Mercy First claiming that Stephen had his collar bone
broken and his skull fractured while in foster are. She (and her husband) both
allege that they have since been barred by Mercy First from taking any pictures of
Stephen. Mrs. Morrison claims that Stephen has received medical treatment on

numerous occasions while in foster care that were charged to her health coverage but she was rebuffed in her efforts to get details of those medical visits.

- Mrs. Morrison has spent tens of thousands of dollars seeking to resolve this case. Dr. Stephen Honor, who did a psychiatric examination of Mrs. Morrison, refused to testify in her defense because she could not pay him $10, 000. Social worker Jill Jones Soderman (LMSW) likewise refused to testify in her defense unless she was paid thousands of dollars. As mentioned, attorney Kasper dropped the case and refused to release her records to her 18-B lawyer or her psychiatrist because he claimed he was owed money.

- Stephen Allen Sr., the father of the child in question was never implicated in the abuse case. He sought to exercise his parental rights from Jamaica, W.I. and hired local attorney Eric Golding, to advocate for him. He paid Mr. Golding $5,000 but alleges nothing was done on his behalf.  (see attached letter)

- Mrs. Morrison, a recent graduate of Hofstra University on Long Island, is now seeking to represent herself in this case. She is unquestionably not the easiest client as she is quite determined, and very assertive towards those representing her. She has changed lawyers a number of times. She has a pending lawsuit against Mercy First. She has been the subject of media coverage in regard to injuries her son suffered in foster care. Her case has attracted boisterous advocates who have demonstrated against the Family Court proceedings. All of these factors help to harden attitudes on all sides and do not make objective analysis easy. Nevertheless she appears to have sought to comply with court requirements in regard to Parenting Classes and Psychiatric exams and desperately wants to reunite with her son. Stephen's father has never been implicated in this case and has sought to assert his rights as the father. Those efforts appear to been shunted aside .  throughout this process.

I write you in the hope that your office can review this case to objectively assure that despite the emotional hue and cry surrounding it, parents and child have received their due process rights. I do not write this as criticism of Judge Tally or others engaged in this process. But I feel I would be remiss if I did not at least seek a venue to express my concerns and my hope that this case can be successfully resolved. Thank you for your consideration and attention to this matter.

Sincerely,

William Scarborough
Assemblyman 29th A.D.

(Enclosure)



HON. THOMAS A. KLONICK, CHAIR
STEPHEN R. COFFEY, VICE CHAIR
JOSEPH W. BELLUCK
RICHARD D. EMERY
PAUL B. HARDING
ELIZABETH B. HUBBARD
HON. JILL KONVISER
NINA M. MOORE
HON. KAREN K. PETERS
HON. TERRY JANE RUDERMAN
MEMBERS

JEAN M. SAVANYU, CLERK

**NEW YORK STATE**
**COMMISSION ON JUDICIAL CONDUCT**

61 BROADWAY
NEW YORK, NEW YORK 10006

646-386-4800    646-458-0038
TELEPHONE        FACSIMILE
www.scjc.state.ny.us

ROBERT H. TEMBECKJIAN
ADMINISTRATOR & COUNSEL

STEVEN SCHECKMAN
DEPUTY ADMINISTRATOR

JEAN JOYCE
ROGER J. SCHWARZ
SENIOR ATTORNEYS

BRENDA CORREA
KATHY WU
KELVIN S. DAVIS
STAFF ATTORNEYS

## CONFIDENTIAL

September 25, 2009

Ms. Sandra Morrison-Allen
371 First Place
Uniondale, New York 11533

Dear Ms. Morrison-Allen:

This is to acknowledge receipt by the State Commission on Judicial Conduct of your complaint dated September 15, 2009.

Your complaint will be presented to the Commission, which will decide whether or not to inquire into it. We will be in touch with you after the Commission has had the opportunity to review the matter.

For your information, we have enclosed some background material about the Commission, its jurisdiction and its limitations.

Very truly yours,

Laura Archilla Soto
Assistant Administrative Officer

Jill G. Jones-Soderman LCSW
10 Cornelison Ave.
Nyack, New York 10960
845 - 353 - 6111

Addressed To:

Hon. Joseph M. Lauria
Administrative Judge
Family Court, City of N.Y.
60 Lafayette St.
New York, N.Y.
646 - 386 - 5190


CC: Office of the Inspector General
     Attn. Carol Hamm
     26 Broadway, 10th floor
     New York, N. Y. 10004
     646 - 386 - 3508

CC: Danielle Kelleher
     Director - Office of Professional Discipline
     475 Park Ave. South
     New York, NY

Date - 8/13/08

Confidential:FCA  166


Subject: Complaint against The Honorable Linda Tally, of the Queens Family Court regarding the appearance of bias and impropriety on the part of Judge Linda Tally commencing in the permanency hearing involving a six year old child maintained in foster care by the foster "Boarding"agency, Mercy First, represented by Ira Eras Esq.

This is a complaint that emanates regarding judicial misconduct on multiple levels. Judge Tally's behavior, rudeness to the point of brazen disrespect toward actors in a court proceeding, mainly the individuals who represented the parent under siege, her hubris in flaunting retaliatory threats as an attempt to intimidate subject witnesses. Judge over reaching support for the positions of ACS attorneys and the foster care attorney, Ira Eras were to a point of such blatant bias that presenting testimony was interfered with in a manner that had nothing to do with rules of evidence and law. Judge Tally's behavior was only equaled by her ignorance of the subject matter that should be within the realm of at

2

least minimal competence and consciousness for a judge in Judge Tally's sacred (not sanctimonious) position on the bench.

This is a complaint regarding judicial misconduct which was witnessed by me both as a spectator viewing Judge Tally's barbed, unnecessary commentary directed at the defendant mother's attorney, Judge Tally's tolerance and even support of rude, disrespectful behavior toward the defendant's mother's attorney by other attorneys in the court and by ACS  and Mercy First caseworkers, present in the court. Judge Tally continued a pattern of rude and disrespectful ongoing commentary toward my profession - as indicated by, among other indices Judge Tally's mangling of the name of my professional licensing (LCSW) and my position as expert witness in the court as per allowance by herself.

## Relevant Facts

In the matter of Stephen Allen Jr., a child in the  foster Boarding home of Mercy First, since Nov. 9. 2005, a permanency hearing was scheduled. Prior hearings were aborted for a variety of reasons resulting in the extended placement of this child in the system.

The original basis for this child having been seized into foster care is hotly contested and the relationship between the foster care agency, ACS and the family is acrimonious.

My role as a forensic consultant in this case is to remove focus from the acrimony that exists and deal with the best interests of the child, cutting through cross allegations and charges. Focus on objective criteria for continued  placement or return home, based on an accurate, non biased assessment of the mother and the child's medical, psychological, education status in foster care as opposed to his prior status when he was at home  was to be and should have been the objective and best interest focus of the hearing.

The proceeding was set for the afternoon session. A hearing was set for a case prior to  the Stephen Allen Jr. hearing, delaying the time set to start the proceedings for Stephen Allen Jr. and his mother Sandra Allen.

An offer to return the child to the mother was placed with conditions which were not acceptable to the mother. The offer was rejected. Apparently, ACS and the foster boarding home did not expect that the offer would be rejected  because Mercy First staff already made an appointment with a mental health facility for ongoing

3

psychotherapy at twelve noon the day of the court appearance, hours before the court appearance took place. The mental health facility called Mrs. Allen's home to confirm the appointment and to gain access to her insurance benefits. The voice mail recording the call from the mental health facility and the time they called are recorded on her voice mail.

Upon entry into the court it was apparent that Judge Tally was perturbed by the failure to dispose of the case through settlement. Her irritable comments of - "continue for another three years" - just go ahead and waste the court's time, this case will be adjourned till Feb. or March or sometime in the Spring........ and a number of other comments of that ilk began the session as Judge Tally continually eyed the clock.

I took my place in the witness stand and positioned myself so that I could clearly view Judge Tally as I addressed the court - as well as being able to view the other attorneys in the court and the ACS/Mercy First workers in the gallery rows.

Judge Tally was irritated further by the sound of a cell phone ring. The phone was rapidly silenced but the offending episode was memorialized by Judge Tally's rant stating that beginning the next session all cell phones not silenced would be taken by the court personnel and donated to the domestic violence division.

From the moment that I took the stand and began to be questioned as a witness, Judge Tally took a position of such disdain and impatience with the attorney for the defendant mother, through her tone of voice, her physiognomy, her repeated sustaining of objections to every question asked by the attorney, Joseph Casper, that the proceeding took on a tone of a star chamber, not a court of equal rights or equal justice. Judge Tally's contempt for the attorney in question was mirrored by the laughter and commentary between all of the attorneys for the opposition who chimed their objections in unison more like a practiced comedy act. Even Judge Tally toned in stating that talking during Mr. Casper's speaking should cease.

The attempt to provide a chilling effect on the participants in the case was not successful - but the interference and limitations in providing testimony majorly interfered with the provision of a full and fair accounting of information which related to the best interest of the child and one could only infer that that was exactly what was intended. The amount of time that Mr. Eras was able to relate commentary and praise for

4

the absent psychologist, who has been absent for every hearing except in that which he presented his findings, was never vetted in a voir dire nor presented a curriculum vitae - not a PHD psychologist - but a Psy. D psychologist - credentials relevant to a masters in science was inordinate. Every objection of Mr. Eras was presented with a paragraph of commentary, ridicule, derision, insult . While his objections to my opine were ignored by me, my resilience was responded to with threats by Judge Tally that if I …….. I would be escorted from the court room. My state license - initials that should be easily memorable - were repeatedly mangled - providing me with an incorrect level of licensing by her misstatement of the licensing. One would suspect such a technique was due to her interest in diminishing my credentials and suggesting that the order of letters was inconsequential, which it is not.

Attempts to discuss the meaningful foundations for why material was presented and what was the basis of my formulations, choice of protocols - things like - research and scholarly writing were summarily dismissed. Judge Tally stated - on the record - "We are not interested in research" - or other people's writing -" children are much too important" to be discussed in terms of research……..which provides the foundations for what constitutes the best interest of children.

While attempting to understand what constitutes an expert's report in the form of a psychosocial diagnostic tool, an investigative inquiry, driven by rigorous protocol and structure, which begins with a mental status examination of some considerable depth, leading to a diagnosis and recommendations for the mother, Judge Tally decided that I should be investigated for investigating the circumstances under which the child in question was as to my conclusion, in grave jeopardy. The mother who had been defamed, liabled and seriously wronged in innumerable ways, clearly emerged as a result of my investigative inquiries and diagnostic review as a person of genuine character and considerable emotional strength. This opinion, which was requested by the Judge, and the foundations for which are written in  what the court and the adversaries considered" an extremely lengthy report - which they were not accustomed to ," engendered pure apoplexy, resulting in a demand for my full and unabridged records, as if such a response was not already contemplated by me.

My appearance as an expert witness was fought desperately. The admission of my extensive report on every aspect of this child's life, prior to being seized by the court and the foster care system was shunned when such material was represented  as being in the best interest of the child - but when Judge Tally thought that she could create a

5

problem for me with the inference - that I violated confidentiality - then she wished to seize upon every bit of work product that I could produce. The adversaries shook their heads in unison agreement, jubilant at a perceived victory. Ira Eras placed his petition for a termination of parental rights against the mother and in favor of continuing the flow of federal funding afforded by the federal legislation CAPTA and ASFA through his successful bid for continuing

The suggestion of bias and concerns not in the best interest of anyone, speak for themselves and I most certainly recommend that Judge Tally be removed from this case and from the bench.

## Violations of Law and Ethical Standards

Judge Tally operated in a manner that was meant to be intimidating, threatening and dismissive. She displayed open bias and a thorough disregard for the life and welfare of a child to the point of depraved indifference. We as of this court date of Aug. 12th have the medical records  repeatedly demanded. We are aware of severe and repeated injuries suffered by this child in the grip of Mercy First. We suspect Judge Tally through her close and frequent dealings with Ira Eras, attorney for Mercy First of participating in a cover-up of the harm caused by Mercy first  to this child.

Judge Tally violated 22NYCRR  100.1:An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintainin and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved....

Judge Tally violated 22NYCRR  100.2(A): a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary

Judge Tally violated  22NYCRR  100.3(B)(3) A judge shall be patient, dignified, courteous to....lawyers .... ( and expert witnesses )...with whom the judge deals in an official capacity.....

Judge Tally violated  22NYCRR  100.2(B): A judge shall not allow family, social, political or other relationships to influence the judges judicial conduct or judgement. The standard of practice allowed to Mitchell Frank,Psy. D. fell far below the standard of practice expected of the privately retained forensic consultant hired by Mrs. Allen and yet

6

the deference conferred, the latitude as to the court's time allowed to Mitchell Frank functioned at a totally different level than that demanded of myself.

Judge Tally violated 22NYCRR 100.3(4): A judge shall perform judicial duties without bias or prejudice against or in favor of any person. A judge in the performance of judicial duties shall not, by words or conduct, manifest bias.....

Judge Tally has caused corruption of the psychological record related to the care and evaluation process RICO,18USC 1512 -(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the objects integrity or availability for use in an official proceeding by allowing a completely inadequate, unethical, incompetent, baseless, destructive psychological report to be included in the court file which has guided the administration of the case against the mother of Stephen Allen Jr. and caused the child to suffer grave and irreparable harm, Judge Tally has violated RICO again, 18 USC 1513(b): Whoever knowingly engages in any conduct and thereby causes bodily harm and injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for - (1)the attendance of a witness or party at an official proceeding, or any testimony given or any record........

Mrs. Allen has been persecuted with demands for attendance in psychotherapy under the nose and thumb of Mercy First and the court. Demands to admit to a crime that she never committed and there is clear evidence to that fact - continually suppressed, while evidence of crimes committed by Mercy First, when reported remain sealed and unexplored.

Judge Tally presumes to be able to take people's property if such property - being a cell phone annoys her, she states she will give that property away. Such action would violate the fourth amendment of the US Constitution which states that property cannot be removed without proper remuneration.

Judge Tally places herself above and beyond the law, acts in poor faith and in restraint of parent/child natural and lawful communion.

The fact that a petition for the termination of parental rights has been placed now constitutes this complaint as an emergency to be reviewed and acted upon.

7

Please be advised that I am forwarding my complaint to the director of my licensing board as my perception that the court is biased as to providing preference to professions that are licensed equally as to their ability to perform evaluations and treatment - psychology and clinical social work. The only activity prohibited to both professions is the ability to prescribe medication/ write prescriptions.

The contributions of both professions in providing information to the court can be invaluable. The co -opting by intimidation or preferential treatment based on cooperation that is fraudulent - provides false information based on hidden agenda's and influence peddling in the courts is occurring at alarming rates and is under reported.

Sincerely Submitted,


Jill G. Jones-Soderman



**NEW YORK STATE**
**COMMISSION ON JUDICIAL CONDUCT**

HON. THOMAS A. KLONICK, CHAIR
STEPHEN R. COFFEY, VICE CHAIR
JOSEPH W. BELLUCK
RICHARD D. EMERY
PAUL B. HARDING
ELIZABETH B. HUBBARD
HON. JILL KONVISER
NINA M. MOORE
HON. KAREN K. PETERS
HON. TERRY JANE RUDERMAN
MEMBERS

JEAN M. SAVANYU, CLERK

61 BROADWAY
NEW YORK, NEW YORK 10006

646-386-4800    646-458-0038
TELEPHONE          FACSIMILE
www.scjc.state.ny.us

ROBERT H. TEMBECKJIAN
ADMINISTRATOR & COUNSEL

EDWARD LINDNER
DEPUTY ADMINISTRATOR

JEAN JOYCE
ROGER J. SCHWARZ
SENIOR ATTORNEYS

BRENDA CORREA
KATHY WU
KELVIN S. DAVIS
STAFF ATTORNEYS

**CONFIDENTIAL**

November 20, 2009

Ms. Sandra Morrison-Allen
371 First Place
Uniondale, New York 11533

Dear Ms. Morrison-Allen:

This is in response to your inquiry postmarked November 16, 2009.

Your letter will be added to your complaint to be considered by the Commission.

We will be in touch with you after the Commission has reached a final disposition in the matter.

Very truly yours,

Laura Archilla Soto
Assistant Administrative Officer



MANUEL A. ROMERO
Chairman

*State of New York*
*Grievance Committee*
*for the*
*Second, Eleventh and*
*Thirteenth Judicial Districts*

Renaissance Plaza
335 Adams Street – Suite 2400
Brooklyn, New York 11201-3745
(718) 923-6300

DIANA MAXFIELD KEARSE
Chief Counsel

ROBERT J. SALTZMAN
Deputy Counsel

MARK F. DEWAN
DIANA J. SZOCHET
MELISSA D. BRODER
SUSAN KORENBERG
COLETTE M. LANDERS
SHARON GURSEN ADES
SUSAN B. MASTER
MYRON C. MARTYNETZ
KATHRYN DONNELLY GUR-ARIE
Assistant Counsel

September 25, 2009

*PERSONAL AND CONFIDENTIAL*
Sandra Morrison-Allen
371 First Place
Uniondale, New York 11553

Re:     *Joseph F. Kasper, Esq.*
        *Docket No: Q -1344 -09*

Dear Ms. Morrison-Allen:

We have received your complaint pertaining to the above referenced attorney. Thank you for taking the time to communicate with us.

The Grievance Committee's function is to investigate and prosecute acts of professional misconduct committed by attorneys. The Committee has jurisdiction over attorneys whose offices are in Brooklyn, Queens or Staten Island.

When a complaint is received, we review it to determine if it involves behavior which could constitute professional misconduct by the attorney. An attorney may be found guilty of professional misconduct if it can be proven that an ethical rule or law was violated. If there is a sufficient basis to conduct an investigation, the Committee will do so. Otherwise, no action will be taken.

After reviewing your complaint, it has been determined that the issues you raise are more appropriate for resolution by a court of law. Therefore, although we appreciate your efforts, we are unable to open this matter for investigation.

Very truly yours,

Diana Maxfield Kearse
Chief Counsel

DMK/cc



Affidavit of Tasha Timol

Date – 4/25/08

I am Tasha Timol, the half sister of Stephen Allen Jr..

Sandra Allen is my biological mother. The Reverend Stephen Allen is my step father.

I am now 18 years old (DOB –8/18/89)

I swear that the information that I am providing is all accurate and true and that I am aware of the serious penalties for perjury or supplying any statement that is not true and accurate.  .

I am writing this affidavit to affirm facts that I know from my own personal  experience, facts known to me because I have been a personally present witness to their occurrences.

I have not been allowed to enter my testimony into  the proceedings of the family court actions which have caused great harm and grief to my brother and myself.

My law gaurdian Errin Galvin has barely  spoken to me,  by phone or in person, visited me or  answered the letters that I have sent to her . I have pleaded for help but no one hears me, least of all the person who was supposed to be paid as my legal guardian.

My brother continues in foster care in the agency Mercy First under the guard of foster care agency and staff personnel. I will name them  for their cruelty and indifference to myself when I was subject to Mercy First and to Stephen jr. who continues to suffer in foster care under Mercy First staff, unable to speak freely to anyone but me, in secret  and unable to report the brutality both physical and emotional to which he has been subject.

We cannot whisper  to try find privacy in communication – we are told to "speak-up – no whispering" which leads to tears from Stephen.I see his face as sad and miserable as the staff sit by with long faces looking at us closely.

We are told that if we speak, complain, cry, pray, take pictures, we will not see each other again. We can only eat together and hold hands.

When I have gone to hug Stephen he has winced in pain. I lifted his shirt – his back was full of scratches – whip marks from the switch.

I told my mother. My mother told the attorney –  who we think told Stuart Altman, Stephen's paid law guardian. I also told my law guardian, Errin Galvin.

I told many members of my family. I told them again and again what was going on.

2

I will prepare a separate report detailing the names dates, places and experiences that I have personally endured and that I have witnessed my brother endure.

My mother, for fighting for Stephen
Jr. and myself had been placed in a mental hospital and in jail. The ACS staff (caseworker Angela Campbell, social worker/Director Deidre Reynolds)  Mercy First staff have shamed and humiliated me, my brother, my family by making statements in my school and in public places, saying that my mother was "crazy and was sent to a mental hospital" and making false statements stating that my mother was" kidnapping me."
My mother tried to protect me from being in a dangerous neighborhood, late  at night when I was carrying bags of presents at a train station – the A train in Far Rockaway.

I am 18 years old and I can assert the knowledge that I possess and can attest to the ill treatment received by my little brother who cannot speak for himself.  I shall do so in the report that will be attached to this affidavit.

The facts regarding our incarceration in foster care have never been represented in any form by my legal representative, Errin Galvin. I have called and begged Ms. Galvin to help me. She responded most minimally and ineffectively. I have written to Ms. Galvin, but received no help.

It is my understanding from my brother that his legal representative Stuart Altman has bareley ever – if he has ever seen Stephen or speaks to Stephen as Stephen has no idea of who  is Stuwart Altman or what he looks like.

Errin Galvin my law guardian said to me when I was finally released from foster care  in Feb. 2006 that" she never knew why I was ever placed in foster care" in the first place.

The facts regarding the true reason for Stephen and I being in foster care have never been represented by anyone.

I am a direct witness to the actions of harm, cruelty and indifference with which we , Stephen Jr. and I were treated  from the moment that we  were seized by the staff of ACS and placed in the Foster Care Agency Mercy First.

I am prepared to discuss in detail the actions of physical and emotional abuse to which Stephen Jr. and I were subject and I will swear to the truth and accuracy of my statements.

I am prepared to discuss in detail the lies told by specific officials at ACS and  Mercy First foster Care Agency that caused my mother and step father  to be falsely accused of harm.

I will end this affidavit by informing the court of Stephen Jr. and my first horrifying experience with Angela Campbell the ACS case worker who came to my private school that I loved attending, to remove me from my mother's love, care and nurture. The school Bechtel Christian Academy (BCLA) was a school that I attended in the 10thgrade and had attended for 4 years.

Angela Campbell picked me up at school stating"your mother has been taken to a mental hospital and we are picking you up and going to join Stephen Jr. at the court because there is no one to care for you". My Dad lived near our home and often took me to school and was teaching me to drive. I did not know why I was taken to a foster home/group home for pregnant teens.

Stephen was attending Lindon SDA a private religious school in Queens., NY.

Angela Campbell picked up Stephen and I, brought us to an office in Queens which I believe was the ACS main office. Angela Campbell dropped us off in a waiting room and left to go to dinner for her dinner break. We were left with no food, water or attention from any adult in the office. We were completely ignored during our stay at that office.

Stephen was crying and begging for mommy to come – no one paid us any attention.

I knew what time it was because I had a watch and a cell phone and we remained alone, without food water or any attention, comfort explanation for approximately six hours.

Our lives have been a living hell apart from our mother, family, home and the protection offered us by those who love and care for us. I will write about that which I have direct knowledge of with regard to my brother Stephen Allen Jr. in a detailed description of events over time. I saw Stephen Jr's fear, abuse by other members of the foster care household, and Stephen" injuries. I knew that other children in the foster household hurt him.Stephen Jr. was afraid and there was no one there to help him.

I am Tasha Timol (Ninotchka Timol).

I swear that the statements that I am making are true and complete to the best of my memory and knowledge.

I have not been prompted in any manner as to the statements that I am making.

Signed X _____

Witness X _____

Dated 4/30/08 _____

**EXHIBIT**



District Attorney Queens County
125-01 Queens Boulevard
Kew Gardens, New York 1415-1568
(718) 286-6000

RICHARD A. BROWN
DISTRICT ATTORNEY

March 4, 2009

SANDR MORRISON-GERAL

Please be advised that a review of the records of the Queens County District Attorney's Office indicates that your arrest under arrest number: Q06603191, arrest date: 1/18/2006, was dismissed by this Office prior to Criminal Court arraignment.

This serves as a final disposition of this arrest number.

A sealing order has been or will be filed by this Office with the Division of Criminal Justice Services (DCJS) and the New York City Police Department.

You should contact DCJS to confirm that this record has been sealed by contacting:

The New York State Division of Criminal Justice Services
4 Tower Place
Albany, New York 12203
Attention: Sealing Unit

Very truly yours,
KANE, SUSAN

# EXHIBIT

IV



**Magnetic Resonance Imaging**
530 First Avenue
New York, NY 10016

Reports:   (212)   263-7059
Fax:       (212)   263-8186

Phone:         (212)   263-7195
Appointments:  (212)   263-8868

NYU Medical Center

MARIO SAINT-LAURENT, MD
37-65 104TH STREET
CORONA, NY  11368

Re: Allen, Stephen

DOB: 16-Sep-2001
Dept No: D90378840
Acc: 2509588
DOS: 18-Aug-2004

Dear Doctor :

The following is a radiologic consultation on your patient:

MRI CONSULTATION

Completed on: 18-Aug-2004

Multiple outside studies are submitted for review,

CT scan of the brain dated October 3, 2001:

Axial sections from the base to the vertex are submitted.

The ventricles and sulci are normal in size for the patient's age. There is no parenchymal abnormality. There is no mass lesion, shift of midline structures, extraaxial collection or hemorrhage. Minimal left scalp swelling is noted.

Impression: Normal examination of the brain.

CT scan of the brain dated October 4, 2001.

Axial sections from the base to the vertex are submitted.

The ventricles and sulci are normal in size for the patient's age. There is no parenchymal abnormality. There is no mass lesion, shift of midline structures, extraaxial collection or hemorrhage. Minimal left scalp swelling is noted. There is no interval change.

Impression: Normal examination of the brain.

MRI scan of the brain dated October 4, 2001.

Sagittal and axial T1 weighted and T2 weighted images as well as axial balanced and T2 weighted images are submitted for review. The ventricles and sulci are normal in size. There is no parenchymal abnormality. There is no mass lesion, shift of midline structures, extra axial collection or hemorrhage. Again noted is minimal left side scalp soft tissue swelling.



**Magnetic Resonance Imaging**
530 First Avenue
New York, NY 10016

Reports:   (212)   263-7059
Fax:       (212)   263-8186

Phone:         (212)   263-7195
Appointments:  (212)   263-8868

MARIO SAINT-LAURENT, MD
37-65 104TH STREET
CORONA, NY   11368

Re: Allen, Stephen

DOB:  16-Sep-2001
Dept No: D90378840
Acc: 2509588
DOS: 18-Aug-2004

Impression: Normal examination of the brain.

Thank you for referring this patient for consultation.

Sincerely yours,

ANDREW LITT, MD

T09:MI   18-Aug-2004

This report has been
electronically signed

Finalized on: 18-Aug-2004/MI



**GHI**
Group Health Incorporated
PO BOX 2814
NEW YORK, NY 10116-2814

**THIS IS AN EXPLANATION OF YOUR BENEFITS**



**Forwarding Service Requested**

7110 0.5176 AT 0.308    3-DIGIT 112

MORRISON-GERALD SANDRA

22

Date: 03/28/07
Provider: JOHNSON CARL E MD
Subscriber: MORRISON-GERALD SANDRA
Subscriber ID: 930456880

Below is a summary of the GHI settlement for services performed.

**MEDICAL PAYMENT SUMMARY**

| Basic Allowance | 0.00 |
|---|---|
| Total | 0.00 |

## MEDICAL PAYMENT INFORMATION

| Service Provided | Service Date | Claim Number | Patient | Submitted Charge | Basic Allowance | Copay Applied | = Payment | Note |
|---|---|---|---|---|---|---|---|---|
| XRAY: PROFESSIONA | 01/19/07 | 0791130440 | STEPHEN | 255.00 | 0.00 | 0.00 | 0.00 | 1 |
| XRAY: PROFESSIONA | 01/19/07 | 0791130440 | STEPHEN | 187.00 | 0.00 | 0.00 | 0.00 | 1 |
| | | | TOTALS | 442.00 | 0.00 | 0.00 | 0.00 | |

NOTE(S):
1. Our records indicate that these services have already been settled on claim number 0603100700.

To report suspected fraud, call GHI's Fraud Hotline at 1-888-4-KO-FRAUD (1-888-456-3728) or e-mail kofraud@ghi.com

Group Health Incorporated  441 Ninth Avenue / New York, NY 10001-1681  /  www.ghi.com    930456880-99
*See the last page for important definitions and claim determination grievance procedures.*

# GHI
Group Health Incorporated
PO BOX 2814
NEW YORK, NY 10116-2814

**THIS IS AN EXPLANATION OF YOUR BENEFITS**

**Forwarding Service Requested**

15036 0.5176 AT 0.308     3-DIGIT 112
MORRISON-GERALD SANDRA
48

| | |
|---|---|
| **Date:** 03/19/07 | |
| **Provider:** NYH CUMC RADIOLOGY GRP | |
| **Subscriber:** MORRISON-GERALD SANDRA | |
| **Subscriber ID:** 930456880 | |

Below is a summary of the GHI settlement for services performed.

**MEDICAL PAYMENT SUMMARY**

| Basic Allowance | 0.00 |
|---|---|
| Total | 0.00 |

## MEDICAL PAYMENT INFORMATION

| Service Provided | Service Date | Claim Number | Patient | Submitted Charge | Basic Allowance | Copay Applied | Payment | Note |
|---|---|---|---|---|---|---|---|---|
| XRAY: PROFESSIONA | 01/19/07 | 0603101240 | STEPHEN | 255.00 | 0.00 | 0.00 | 0.00 | 1 |
| XRAY: PROFESSIONA | 01/19/07 | 0603101240 | STEPHEN | 187.00 | 0.00 | 0.00 | 0.00 | 1 |
| XRAY: PROFESSIONA | 01/19/07 | 0603101270 | STEPHEN | 255.00 | 0.00 | 0.00 | 0.00 | 1 |
| XRAY: PROFESSIONA | 01/19/07 | 0603101270 | STEPHEN | 187.00 | 0.00 | 0.00 | 0.00 | 1 |
| | | | TOTALS | 884.00 | 0.00 | 0.00 | 0.00 | |

NOTE(S):

1. Our records indicate that these services have already been settled on claim number 0603100700.

To report suspected fraud, call GHI's Fraud Hotline at 1-888-4-KO-FRAUD (1-888-456-3728) or e-mail kofraud@ghi.com

# GHI

**Group Health Incorporated**
PO BOX 2814
NEW YORK, NY 10116-2814

**Forwarding Service Requested**

**T... S IS AN EXPLANATION OF YOUR BENEFITS**

11979 0.7160 AT 0.308    3-DIGIT 112

MORRISON-GERALD SANDRA                              -45

| | |
|---|---|
| **Date:** 03/19/07 | |
| **Provider:** BRILL PAULA MD | |
| **Patient:** STEPHEN | |
| **Claim Number:** 0603101250 | |
| **Subscriber:** MORRISON-GERALD SANDRA | |
| **Subscriber ID:** 930456880 | |
| **Check Number:** 00032999 | |
| **Check Amount:** $36.30 | |

Below is a summary of the GHI settlement for services performed.

| MEDICAL PAYMENT SUMMARY | |
|---|---|
| Plan Allowance | 36.30 |
| Payment To You | 36.30 |

## MEDICAL PAYMENT INFORMATION

| Service Provided | Service Date | Submitted Charge | Plan Allowance | Deductible Applied | CoIns | Payment | Note |
|---|---|---|---|---|---|---|---|
| NUCLEAR MED: PROF | 01/19/07 | 119.00 | 36.30 | 0.00 | 0.00 | 36.30 | |
| **TOTALS** | | 119.00 | 36.30 | 0.00 | 0.00 | 36.30 | 1 |

**NOTE(S):**

1. For the 2007 plan year, the remaining deductible for the patient is $0.00 and the remaining deductible for the family is $300.00.

To report suspected fraud, call GHI's Fraud Hotline at 1-888-4-KO-FRAUD (1-888-456-3728) or e-mail kofraud@ghi.com

# GHI
Group Health Incorporated
PO BOX 2833
NEW YORK, NY  10116-2833

**Forwarding Service Requested**

**THIS IS AN EXPLANATION OF YOUR BENEFITS**



**DATE:** 04/06/07

20376 0.3516 AV 0.293    5-DIGIT 11236
SANDRA MORRISON-GERALD
67

**SUBSCRIBER ID:** 930456880
**CLAIM NUMBER:** 1708740272
**PATIENT NAME:** STEPHEN ALLEN
**CHECK NO:** 000000000
**CATEGORY NO:** C50 A
**PROVIDER NAME:** JAMAICA HOSPITAL

**DATE(S) OF SERVICE**  01/18/07

## WE HAVE DENIED THE ABOVE CLAIM FOR YOUR OUTPATIENT HOSPITAL STAY.

THE FOLLOWING SERVICES WERE NOT PAID:

EMERGENCY ROOM                               ANCILLARY

REMARKS: NS - THIS HOSPITAL PLAN DOES NOT COVER THIS TYPE OF SERVICE.

PAYMENT SUMMARY IS AS FOLLOWS:

| | |
|---|---|
| GHI ALLOWED CHARGE | |
| LESS: PAYMENT DISCOUNT | $0.00 |
| | 0.00 |
| GHI PAYMENT | $0.00 |

YOU ARE NOT RESPONSIBLE FOR THE PAYMENT DISCOUNT. YOU ARE RESPONSIBLE TO THE PROVIDER FOR THE DEDUCTIBLE, CO-INSURANCE, MANAGED CARE PENALTY AND NON-COVERED DAYS/CHARGES THAT ARE EXCLUDED FROM THIS CLAIM. IF YOU HAVE ANY QUESTIONS, PLEASE WRITE TO P. O. BOX 2833, NEW YORK, NY 10116-2833, OR CALL (212) 615-0500.

TO REPORT SUSPECTED FRAUD, CALL GHI'S FRAUD HOTLINE AT 1-888-4-KO-FRAUD (1-888-456-3728) OR E-MAIL KOFRAUD@GHI.COM

Valarie 4/9

# GHI

**Group Health Incorporated**
P.O. Box 1700
New York, NY  10023-1700

**Forwarding Service Requested**

3875 0.8820 AT 0.308      3-DIGIT 112
MORRISON-GERALD SANDRA
                                          14

Date: 03/16/07

Member ID: 930456880

Dear Subscriber:

We acknowledge the receipt of your claims payment request which is now being processed. You will be notified of our determination once claims processing is completed. It is not necessary for you to contact us at this time. Please note that claim information below refers to services rendered by non-participating provider(s).

| CLAIM | PATIENT | PHYSICIAN | FIRST DAY OF SERVICE | LAST DAY OF SERVICE |
|-------|---------|-----------|----------------------|---------------------|
| 0603101240 | STEPHEN | JOHNSON CARL E MD | 01/19/07 | 01/19/07 |
| 0603101250 | STEPHEN | BRILL PAULA MD | 01/19/07 | 01/19/07 |
| 0603101270 | STEPHEN | JOHNSON CARL E MD | 01/19/07 | 01/19/07 |

Sincerely,

GHI Customer Services Division

# GHI
Group Health Incorporated
PO BOX 2814
NEW YORK, NY 10116-2814

**THIS IS AN EXPLANATION OF YOUR BENEFITS**

**Forwarding Service Requested**

3875 0.8820 AT 0.308        3-DIGIT 112

MORRISON-GERALD SANDRA                    14

| | |
|---|---|
| **Date:** 03/15/07 | |
| **Provider:** NYH CUMC RADIOLOGY GRP | |
| **Patient:** STEPHEN | |
| **Claim Number:** 0603100690 | |
| | |
| **Subscriber:** MORRISON-GERALD SANDRA | |
| **Subscriber ID:** 930456880 | |
| **Check Number:** 09968273 | |
| **Check Amount:** $36.30 | |

Below is a summary of the GHI settlement for services performed.

| MEDICAL PAYMENT SUMMARY | |
|---|---|
| Plan Allowance | 36.30 |
| Payment To You | 36.30 |

## MEDICAL PAYMENT INFORMATION

| Service Provided | Service Date | Submitted Charge | Plan Allowance | Deductible Applied | - Coins. | = Payment | Note |
|---|---|---|---|---|---|---|---|
| NUCLEAR MED: PROF | 01/19/07 | 119.00 | 36.30 | 0.00 | 0.00 | 36.30 | |
| | TOTALS | 119.00 | 36.30 | 0.00 | 0.00 | 36.30 | 1 |

**NOTE(S):**
1. For the 2007 plan year, the remaining deductible for the patient is $0.00 and the remaining deductible for the family is $300.00.

To report suspected fraud, call GHI's Fraud Hotline at 1-888-4-KO-FRAUD (1-888-456-3728) or e-mail kofraud@ghi.com

**EXHIBIT**

V 1

JAMAICA HOSPITAL MEDICAL CTR.
8900 VAN WYCK EXPRESSWAY
JAMAICA, NY 11418

## DEPARTMENT OF RADIOLOGY

Patient Name:   ALLEN, STEPHEN
        MRN #:   001138585                               DOB: 09/06/2001
Patient Loc:   PED ER             Billing/Visit Number:116627290
Attending MD:   Staff, Physician
Requested by:   STAFF, PHYSICIAN              Completed on:   01/18/2007

        Exam:   CT head w/o
                                                ACC #:   1621803
History: r/o fx

A noncontrast CT of the brain was performed.   There are no prior
studies available for comparison.

Exam demonstrates left temporal occipital skull fractures.   Small
fragments and irregularity along the interior table of the
calvarium is seen.   The appearance of this irregularity and
associated fragments suggest at least this portion of the
fracture is subacute to chronic.   The linear most posterior
portion is indeterminate in age.

Increased density along the lateral aspect of the left temporal
lobe is compatible with hemorrhage.   The borders are indistinct.
Favor extra-axial in location with the blood products being acute
to subacute.   Associated temporal parenchymal contusions cannot
be excluded.   Extra-axial fluid in the left occipital parietal
region appears more compatible with late subacute to chronic
hemorrhage.

There is no evidence of midline shift or hydrocephalus.   Left
parietal scalp swelling is seen.

IMPRESSION:

CRANIAL AND INTRACRANIAL INJURIES AS DESCRIBED.   PLEASE REPORT
READ REPORT FOR DETAILS.   THE PEDIATRIC EMERGENCY DEPARTMENT WAS
AWARE OF THESE FINDINGS AT TIME OF EXAMINATION.   PATIENT WAS
TRANSFERRED TO CORNELL UNIVERSITY.

SCOTT TREPETA, M.D.
Transcribed on: 01/19/2007   8:40 AM by Articulate Interface      /signed by/SCOTT TREPETA, M.D.
Finalized on: 01/19/2007   8:40 AM by Articulate Interface

JAMAICA HOSPITAL MEDICAL CTR.
8900 VAN WYCK EXPRESSWAY
JAMAICA, NY 11418

## DEPARTMENT OF RADIOLOGY

Patient Name:   ALLEN, STEPHEN
        MRN #:   001138585                      DOB: 09/06/2001
Patient Loc:   PED ER            Billing/Visit Number:116627290
Attending MD:   Staff, Physician
Requested by:   STAFF, PHYSICIAN               Completed on:  01/19/2007

        Exam:   DX clavicle bilateral
                                        ACC #:   1621791
Associated Exam:DXCLVB
                                      (A)ACC #:   1621790
History:

Multiple views of both clavicles and shoulders are submitted for
review and show no fracture, subluxation or soft tissue
abnormalities.

Addendum # 1 by Natalia Dolin on 01/19/2007  8:23 AM

The 2nd review of this examination shows a nondisplaced fracture
of the midclavicle on the left.

NATALIA DOLIN
Transcribed on: 01/19/2007 8:23 AM by       /signed by/NATALIA DOLIN
  Addended on: 01/19/2007 8:23 AM by Articulate Interface
Finalized on: 01/19/2007  8:23 AM by Articulate Interface

```
H       644 98 72      01/19/07
ALLEN, STEPHEN
10044152 6
09/06/2001
HYDEN PHILIP W        HY004
```

Review All
01/19  12:52

-- Continued from previous page -

Physical Limitations: none
Tobacco Use: Has the patient used any tobacco in the past year? no

Major Equipment (upon admission): none

Key Contacts (include Name, address, phone #):
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
of note: according to Miss Reynolds, pt is not to have any
contact with his mother at all, she is not allowed to visit or
call and no information should be given to her over the phone.

Mental Status:
    Patient: pt appears outgoing, talkative, and playful with staff;
however becomes very quiet and withdrawn when directly asked any
questions about how his injury occurred.
    Caregiver: no caregiver at bedside
Spiritual Needs: none at this time
Social Resources: child has foster care family; referral made to
child life services

Employment: pt is a child
Medical Coverage: Medicaid DE62842B
Financial Resources: unknown
Comments: Foster father works independently repairing tractor
trailers; mother used to work in childcare
Barriers to discharge: pt not medically ready at this time

Assessment:  the information in this assessment was gathered from
the pt directly, from Miss Reynolds at Mercy First foster care
agency, and from ▓▓▓▓▓▓▓ the pt's foster mother.
Pt presents as a 5 yo African American male admitted to the PICU
for for further monitoring and management of a left parietal skull
fracture, left sided occipital fracture with a small subdural
hemorrhage.  Patient also with left clavicular fracture.  Per pt
he "fell from the bed."  Pt appeared alert and talkative but was
not forthcoming with further information regarding the fall.  When
asked questions about the fall directly pt became withdrawn with
flat affect.  Pt says his new foster parents are being very nice
to him but that he is unhappy.  Pt appears developmentally
appropriate.  During assessment pt pointed to his genital area
complaining of pain in that region, but was not able to articulate
nature of pain or if anything bad happened to him.  SSW informed
medical team of this.
Miss Reynolds provided an extensive history for this pt.
According to Miss Reynolds pt was originally in care of bio mother
and bio sister (who is now 17 yo).  When pt was 21 months old his
sister allegedly dropped him on his head and he suffered a skull
fracture.  Pt has had an open ACS case from that point on due to
perceived neglect on the part of bio mother.  Pt resided with bio
mother until 4 yo at which point he was removed from the home
partly due to mother having a disruptive outburst in court that
required psychiatric evaluation.  Pt was temporarily in custody of
his uncle after this however his uncle was non-compliant with ACS
and was aggressive and threatening towards ACS workers.  Pt was
removed and put into the care of ▓▓▓▓▓▓▓ where he resided
for one year.  During this time pt's bio mother was suspended from
visiting, however his MGM and sister were allowed to visit with
him every other week.  Per Miss Reynolds pt's MGM and sister were
very suspicious of his foster mother and constantly checking pt's
body for signs of neglect or abuse and reporting these perceived
signs back to the child's bio mother.  The mother continued to be
confrontational and accusatory with pt's foster mother, so on
12/14/2006 ▓▓▓▓▓▓▓ decided she no longer could have pt in
her care.  Please see next note for remaining details.
Plan: Will continue to follow.

Educational activity will be documented on the interdisciplinary
Patient and Family Education Record.

Plan Discussed With: Interdisciplinary Team
Plan Agreed To By: Interdisciplinary Team
Phone Extension: Amanda Sirignano SSW X64817 M,T,F
*if W or Th Orindy Zee LCSW X63111 will follow
-- Continued on next page --

*walked w/ LIMP* [handwritten]

Requested by:
▓▓▓▓▓▓▓▓

```
M      644 98 72    01/19/07
ALLEN, STEPHEN
10044152 6
09/06/2001
HYDEN PHILIP N        NY004
```

Corrected by: Martha C. Kutko, MD, KU84I12:46  01/19/07
Entered by:    Martha C. Kutko, MD, KU84I12:03  01/19/07

Original data:

Ped Critical Care Attending        Martha C. Kutko, MD, KU041

**INCOMPLETE**

History reviewed. Patient examined with team. Reviewed with team.
Stephen is a 5 year old boy admitted to the PICU for further
monitoring and management of a left parietal skull fracture, right
sided occipital fractures with a small subdural hemorrhage.
Patient also with left clavicular fracture. On questioning today,
he is not very forthcoming with information regarding his injury.
He does say that he fell from the bed and told his mom. He denies
anyone hurting him. He gave a much more detailed account of the
events leading to his injuries to the admitting resident and
fellow and are documented in Dr. Posmuoli's note. Patient has
been in foster care since December. He was reportedly removed from
his home for neglect. He has been in this current foster home for
the past two days and has been in two others prior to this. As per
Dr. Horne, the medical director at Mercy First (foster care
agency) patient was removed from the first foster home for a
deliberate injury to his forehead with a belt buckle. He was
removed from the second home because medical attention was not
sought in a timely fashion following his fall with a large
swelling on his head and complaints of arm pain. When the patient
was transferred to this most recent home, the new foster mother
was given a prescription for a skull and clavicle xray. This was
not presented to the new mother as an urgent need and was not
completed immediately. When he complained of arm pain and the
mother noticed a lump over his left clavicle, she brought him to
the ED for further evaluation.

He was brought to the ER tonight, where he underwent a full
evaluation. PE was notable for normal vitals (T 99, BP 110/70, R
22, HR 112) and a PE notable for a left occipital swelling with
step-off and a left clavicular deformity. His neuro exam was
normal and the remainder of his exam was WNL. A head CT was done
and was read as a left temporal and occipital fracture, with a
chronic subdural bleed. Imaging was done of the left clavicle,
which demonstrated a fracture (images could not be sent due to
technical problems). CBC and coags were done and were normal. ACS
was notified (Dr Ben Bordiuk, case # 24014655). In addition, Dr.
Horn from Mercy Trust Foster care system was notified and he
stated that he believed that the child fell from a bunk bed about
8-9 days ago. He was transferred to out PICU without incident.

He arrived here in stable condition. Neurosurgery was called and
did a formal evaluation. Orthopedics was called as well for the
fracture and a formal evaluation was done.

Social: He is under foster care for unknown reasons at this time.
He is living with a new foster care mother. He reports that he is
not in school.

Medical history: unknown

Physical exam:
  Vital Signs:
  T: 37.6(01/19 02:00)    HR: 107 (01/19 04:00)
  NIBP: 111/69 (01/19 02:00)  Resp Rate: 20 (01/19 04:00)
  O2Sat: 100 (01/19 04:00)
  general: awake, alert, no acute distress, smiling, happy,
  interactive and playful
  HEENT: + soft, large (about 12 cm x 10 cm) hematoma on the left
  parietal/occipital region, OP clear, + poor dentition with
  numerous caries, no EAD
  Heart: RRR, no murmur
  Lungs: CTA b/l, moving air equally and well
  Abd: NT, ND, no masses, no HSM
  GU: normal male, testes down b/l
  ext: + left clavicular deformity with possible callous formation,
  FROM in all joints, no swelling or erythema
  neuro: CN intact, sensation and motor function intact in UE/LE,
  cerebellar function intact, reflexes 2 plus in UE/LE

A/P: 5 yo male here for further management of a subdural bleed
from an uncertain event.
                Requested by:
Head bleed?@willi?

-- Continued on next page --



Angel Guardian Campus
6301 12th Avenue
Brooklyn, NY  11219-6213
718.232.1500
718.873.9543 fax

**mercyFirst**

where children can hope
and families can heal

Re: Stephan Allen

DOB:9/18/01

Stephen was brought to the health office escorted by his foster mother for an evaluation of an injury to his forehead occurring the day before yesterday. Foster mother had reported to the caseworker that the injury occurred when another foster child in the home, an infant, threw the belt hitting Stephen in the forehead.

Stephen was cheerful and playful in the health office. He was noted to relate well with his foster mother and appeared comfortable in their interactions. When interviewed alone Stephen said that the other child had thrown the belt "for no reason" and that the belt hit him in the head. He reported that he cried and was comforted by his foster mother then was "OK".

On examination Stephen had a superficial round discreet abrasion on his forehead measuring approximately 1 to 2 millimeters in diameter. There was no swelling or bruising noted around the abrasion.

In conclusion Stephen has a superficial small abrasion possibly caused by being nicked with a belt, probably the buckle. The injury is consistent with Stephen and his foster mother's account of the incident. No suspicions of child abuse indicated based on evaluation.

James Horne, D.O.
Medical Director
mercyFirst

Administrative Office
525 Convent Road
Syosset, NY  11791-2864
516.921.0808
516.921.1542 fax
www.mercyfirst.org

REPORT NO: RARPTC
AS OF DATE: 26JAN07
RETENTION: 1 DAY

R A D I O L O G Y     R E P O R T

TIME:      10:21
PREPARED: 26JAN(
PAGE NO:

Radiologist: BRILL, PAULA

Resident: JOU, AUSTIN

Patient Name: ALLEN, STEPHEN
DOB: 09/06/2001      Age:  5      Sex: M

Medical Record Nbr: (00000)006449872
Location: 01G06N-6214-A      Admit Dr: HYDEN, PHILLIP W MD

Order Doctor: COHEN, LILIAN LIOU D

Status: FINAL      Transcriptionist: BRILL, PAULA

Case Number          Procedure Name
01-RA-07-008642       CLAVICLE LEFT

Exam date/time
01/19/07 15:35

CLAVICLE LEFT READ
REPORT

Clinical statement: Unexplained trauma.^

Technique: Two views of the left clavicle^

Comparison: None available.^

Findings: An irregular oblique lucency involving the middle third of the^
left clavicle likely represents a nondisplaced clavicular fracture.^
There is no significant soft tissue swelling.^

CLAVICLE LEFT IMPRESSION
IMPRESSION:
Nondisplaced fracture involving the middle third of the left^
clavicle.^

DIAGNOSIS: ^
01RA07008642^

* * * END OF REPORT * * *

REPORT NO:  RARPTC
AS OF DATE: 26JAN07
RETENTION:  1 DAY

R A D I O L O G Y    R E P O R T

TIME:      10:22
PREPARED: 26JAN
PAGE NO:

Radiologist:  BRILL, PAULA

Resident: JOU, AUSTIN

Patient Name: ALLEN, STEPHEN
DOB: 09/06/2001    Age:    5    Sex: M

Medical Record Nbr: (00000)006449872
Location: 01G06N-6214-A

Order Doctor: COHEN, LILIAN LIOU D

Admit Dr: HYDEN, PHILLIP W MD

Status: FINAL

Transcriptionist: BRILL, PAULA

Case Number
01-RA-07-008567

Procedure Name
PORT CHEST 1 VIEW

Exam date/time
01/19/07 06:22

PORT CHEST 1 VIEW READ
REPORT
Clinical statement: Abnormal chest sounds.^

Technique: AP chest radiograph.^

Comparison: None available.^

Findings: The cardiothymic silhouette is within normal limits. Low lung^
volumes are present bilaterally. The lungs are otherwise grossly clear.^
No pleural effusion is identified.^

PORT CHEST 1 VIEW IMPRESSION
IMPRESSION:
Grossly clear lungs.^

DIAGNOSIS: ^
01RA07008567^

* * * END OF REPORT * * *

REPORT NO:  RARPTC
AS OP DATE: 26JAN07
RETENTION:  1 DAY

R A D I O L O G Y    R E P O R T

TIME:      10:22
PREPARED:  26JAN
PAGE NO:

Radiologist:  BRILL, PAULA

Resident: JOU, AUSTIN

Patient Name: ALLEN, STEPHEN
DOB: 09/06/2001    Age:    5    Sex: M    Medical Record Nbr: (00000)006449872
Location: 01G06N-6214-A    Admit Dr: HYDEN, PHILLIP W MD
Order Doctor: WILSON-TAYLOR, MELAN

Status: FINAL    Transcriptionist: BRILL, PAULA

Case Number        Procedure Name
01-RA-07-008709    OSSEOUS SURVEY COMPLETE    Exam date/time
                                              01/19/07 15:35

OSSEOUS SURVEY COMPLETE READ
REPORT

Clinical statement: Unexplained trauma. Evaluate for possible fracture.^

Technique: Complete osseous survey (11 images submitted)^

Comparison: Two views of the left clavicle dated 1/19/2007.^

Findings:^

Skull: No definite fracture or dislocation is identified.^

Cervical spine: Please see the dictated report from the CT of the^
cervical spine dated 1/19/07.^

Thoracic spine: No acute fracture or dislocation is identified.^

Lumbar spine: No acute fracture or dislocation is identified.^

Thorax: Again noted is a nondisplaced mid left clavicular fracture, as^
detailed on the separately dictated radiographs of the left clavicle^
dated 1/19/2007. No rib fracture is identified. The cardiothymic^
silhouette is within normal limits. The lungs are clear.^

Pelvis: No acute fracture or dislocation is identified.^

Femora: No acute fracture or dislocation is identified.^

Right and left tibia and fibula: No acute fracture or dislocation is^
identified.^

Humeri: No acute fracture or dislocation is identified.^

Forearms: No acute fracture or dislocation is identified. An intravenous^
catheter is seen projecting over the right antecubital fossa.^

SSEOUS SURVEY COMPLETE IMP
MPRESSION:

Nondisplaced mid left clavicular fracture.^
No additional acute fracture is identified.^

AGNOSIS: ^

```
****************************
***   ERROR TX REPORT   ***
****************************


TX FUNCTION WAS NOT COMPLETED


TX/RX NO              4629
CONNECTION TEL                   15187395454
SUBADDRESS
CONNECTION ID
ST. TIME             07/28 18:01
USAGE T              00'00
PGS. SENT            0
RESULT               NG        #018  BUSY/NO SIGNAL
```

THOMAS R. SUOZZI
COUNTY EXECUTIVE



JOHN E. IMHOF, PhD.
COMMISSIONER

**NASSAU COUNTY**
DEPARTMENT OF SOCIAL SERVICES
60 CHARLES LINDBERGH BOULEVARD, SUITE 160
UNIONDALE, N.Y. 11553-3686

*Sandra Marrison*                    7-21-08

On ___7-16-08___ Child Protective Services received an allegation of
suspected abuse / maltreatment of ___Stephen Allen___.
Although a representative of Children's Protective Services has visited your home on
___7-16-08___ and has left a message for you to contact us, to date we
have not heard from you.

In compliance with the Child Protective Act, it is mandated that we investigate all
reported cases of suspected abuse and maltreatment to children.

Please call me no later than ___7-25-08___ at ___227-8205___
between 9:00 A.M. and 4:45 P.M. to arrange an appointment.    or
                                                   227-8213

LEAVE A DAYTIME
PHONE NUMBER

Sincerely,

___MRS FAURE___

CASEWORKER

THOMAS R. SUOZZI
COUNTY EXECUTIVE



JOHN E. IMHOF, Ph.D.
COMMISSIONER
MARY H. BROSNAN, ESQ.
DEPUTY COMMISSIONER

**NASSAU COUNTY**
DEPARTMENT OF SOCIAL SERVICES
60 CHARLES LINDBERGH BLVD., SUITE 160
UNIONDALE, NEW YORK 11553-3686
Phone: 516-227-7403 Fax: 516-227-8432
Email: John.Imhof@htsnassaucountyny.us

Date  *7-16-08*

*SANDRA MORRISON ALLEN*
_____
_____

Dear Sir/Madam:

I was at your home today to discuss a situation which has been brought to our attention regarding your child(ren).

I am the worker assigned to the case and I would like to arrange an appointment to meet with you to discuss the situation in further detail.

Please call me at (516) *227-8205* _____ so that we may arrange an appointment which is mutually convenient.

I look forward to meeting with you.

Very truly yours,

*MRS FAURE*
Caseworker
Unit *134*
Child Protective Services

Case 2:10-cv-00667-SJF-ARL   Document 5   Filed 02/17/10   Page 55 of 62

THE LEGAL AID SOCIETY

2006 NOV 15 PM 2 37

To-Erin Galvin,

From-TASHa Tind

I went to family court looking for you, and could not find you, So Im leaving you this message. My last visit with stephen Allen Jr. (My brother) was 11/9/06. I noticed he had even more bruises this time on his body, He had red bruises over each of his breast, he also had a cut on his ear and it looks like its been irratated. When I asked about these bruises he could it explain. I got teary eyed. Me and my grandmother were very sad to see him like this. I tried to take pictures of him for album but, the caseworker (ms. reynolds) threatned to cancelled the visit if I took pictures with my brother. I left a message for you on Nov. 10.06 because this is very upsetting to me. My phone number is 1646.624.8987 am very intrested in my brother Saftey and wellbeing

Thankyou
LuvTyBigSiA
Tasha Tind

**EXHIBIT**

VII



State of New York, held in and for the
County of Queens, at 151-20 Jamaica Ave
Jamaica, New York 11432

**FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS**

**PRESENT:**  Hon. Linda Tally

In the Matter of

ACS

         **Petitioner**     vs.

SANDRA MORRISON

         **Respondent**

File #:
Docket #: N 14666/01

**All Purpose Short Order**

IT IS HEREBY ORDERED THAT ACS AND/OR MERCIFIRST SHALL PROVIDE THE SUBJECT CHILD WITH MEDICATION PRESCRIBED BY A LICENSED PSYCHIATRIST DESPITE THE FAILURE OF THE RESPONDENT-MOTHER TO PROVIDE CONSENT THEREFOR.

Dated: MAY 31, 2007

Enter:

_____
**Hon. Linda Tally**

Check applicable box:
☐ Order mailed on [specify date(s) and to whom mailed]:_____
☐ Order received in court on [specify date(s) and to whom given]:_____

**EXHIBIT**

VIII



FLOKS - Queens-Family - Inquiry - B-19765-08

File  Edit  FlexDocket  Tools  Administration  Window  Help

Court    Queens-Family
File #    Note
Docket #    B-19765-08
DVMLegacy Dckt

Petitioner(s)    Agency Filer
Respondent(s)    Stephen Allen Sr
Child(ren)    Stephen Daniel Allen (DOCKETED)
Assigned Judge    Linda Tally

Attorney
Case Create
Court Activity
E-Courts
Forms
Inquiry
Inquiry - OPTOP
Motions
Objections
Ordered Reports
Print Queue
Registry Check
Reports
Rescheduling
Scheduling
Tracking
Transfers
UCMSNet

File Sum | Docket Sum | Roster | Notes | Warrants | Forms | Ordered Dys | Attorney | Mot | Obj | Appearances | S&O | OP | Legacy/Transfer | Charges | Audit

Filing Location: Queens County Family Court

Date Summary
Filed
Fact Finding Completed
Disposition
Standards and Objec
Days Remaining
Issue Joined

Hearing Category:
Termination of Parental Rights

Outstanding Warrants (If relate First):

Dispositions:

Last Appearance
Date
Judge    Linda Tally
Part    PLCOM A
Recorder
Term
Orphil

Diagnosis:
Conference/Settlement
Motion

Other:
Stephen Daniel Allen - Permanency Open 10/11/2
Stephen Daniel Allen - Permanency Achieved 10/

Highlights:
Motion Granted
Motion Settled

Specialty Tracking:

Future Appearances

| Location | Date | Time | Judge | Part | Function | Specialty Tra | Comments |
|---|---|---|---|---|---|---|---|
| Queens County Family Court | 12/02/2008 | 10:30 PM | Linda Tally | 12 | Fact Finding | | |
| Queens County Family Court | 12/02/2008 | 03:30 PM | Linda Tally | 12 | Fact Finding | | |

Docket
Inquiry
Notes:    The respondent mother may not file any further motions without prior approval of the Court.

Return Selection To Case Create    Done    Cancel

Print Barcode Sheet...
Show Family Tree...

372 First Place
Uniondale
New York 11553

The Hon. Linda Tally
Queens Family Court
Part 12
151-20 Jamaica Avenue
Queens Jamaica N.Y. 11553

Dear Judge Tally,

RE: STEPHEN ALLEN JR.  SANDRA MORRISON-ALLEN CASE DOCKET NO. B19875/08 NNL666/01
REQUESTING COURT ORDERS TO BE REDUCED TO WRITING ( 3/24/09 to  6/09/09)

The court file does not include the recent orders issued.  Myself and attorney March(now court
appointed consultant) would like to secure copies of the court orders issued during 3/24/09 and
6/09/09. The court order denying my son from attending my graduation at Hofstra University and his
cousin's graduation from Albert Einstein College of Medicine was not reduced to a written order as per
Mr. March.

I humbly ask that this order along with the order for Mercy First Foster Care to make
psychiatric evaluation without my presence be available to myself and attorney March  in
writing. We need all court orders that were issued while Mr. March was the attorney  between
3/24/09  and  6/09/09) for an appeal  and  or to reargue.

The records room with its courteous staff, is willing to produce the file when it is available,
offer the file for copies if it is available and to minimize my return visits for copies of my file.
Please, I humbly ask that the records room is provided with the file and the required court
orders (3/24/09-6/09/09) availability.

I humbly ask again that this is done in a timely manner.

Sincerely,

Sandra Morrison-Allen

Cc Andrew March  Esq.
Cc Chief Supervising Judge Edwina  Richardson-Mendelson
cc. New York State Senior Senator  Honorable Charles Schumer
cc. Jamaican Embassy, United State of America
cc. Hillary Clinton, Secretary of Ste Unites States

🏢001

```
*****************
*** TX REPORT ***
*****************
```

JOB NO.                     1501
ST. TIME                    07/02 16:11
PGS.                        1
SEND DOCUMENT NAME

TX/RX INCOMPLETE            ------
TRANSACTION OK             17182972826
ERROR                       ------

371 First Place
Uniondale
New York 11553

# SECOND REQUEST 7/2/09

The Hon. Linda Tally
Queens Family Court
Part 12
151-20 Jamaica Avenue
Queens Jamaica N.Y. 11553

Dear Judge Tally,

RE: STEPHEN ALLEN JR.  SANDRA MORRISON-ALLEN  CASE  DOCKET NO.  B19765/08  NN14666/01
REQUESTING COURT ORDERS TO BE REDUCED TO WRITING ( 3/24/09 to  6/09/09)

The court file does not include the recent orders issued.  Myself and attorney March(now court appointed consultant) would like to secure copies of the court orders issued during 3/24/09 and 6/09/09.  The court order denying my son from attending my graduation at Hofstra University and his cousin's graduation from Albert Einstein College of Medicine was not reduced to a written order as per Mr. March.

I humbly ask that this order along with the order for Mercy First Foster Care to make a psychiatric evaluation without my presence be available to myself and attorney March in writing.  We need all court orders that were issued while Mr. March was the attorney (between 3/24/09 and 6/09/09) for an appeal and  or to reargue.

The records room with its courteous staff, is willing to produce the file when it is available, offer the file for copies if it is available and to minimize my return visits for copies of my file.  Please, I humbly ask that the records room is provided with the file and the required court orders (3/24/09-6/09/09) availability.

I humbly ask again that this is done in a timely manner.

Sincerely,

Sandra  Morrison-Allen

Cc Andrew March  Esq