UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SANDRA MORRISON ALLEN,

                    Plaintiff,

       - against-

JOHN MATTINGLY, Commissioner of ACS,
DEIDRE REYNOLDS, Director Mercy First
Foster Care, JEANIE CAMBRIA, Mercy
First Foster Care, STEWART ALTMAN, Law
Guardian for Child, ERIN GALVIN, ESQ.,
RACHELLE SKUOL [sic], ESQ., for
Administration for Children Services,
ANGELLA [sic] CAMPBELL, Caseworker for
ACS, DR. DEBRA ERNERSIO-JENSSEN [sic],
ANDREA LOMAX, Caseworker, JOSEPH
KASPER, ESQ., SISTERS OF MERCY/MERCY
FIRST FOSTERCARE BOARDING HOMES,
"JOHN DOE," IRA ERAS, ESQ. and
JUDGE LINDA TALLY,

                    Defendants.
-------------------------------------------------------X

**OPINION AND ORDER
10 CV 0667 (SJF)(ARL)**

FEUERSTEIN, J.

      On February 16, 2010, *pro se* plaintiff Sandra Morrison Allen ("plaintiff") commenced

this action pursuant to, *inter alia*, 42 U.S.C. §§ 1983, 1985 and 1986 against: (1) defendants John

Mattingly ("Mattingly"), as commissioner of the New York City Administration for Children's

Services ("ACS"), Rachelle Sukol, Esq. ("Sukol"), i/s/h as Rachelle Skuol, Esq., as the attorney

for ACS, and Angela Campbell ("Campbell"), i/s/h as Angella Campbell, as caseworker for

ACS, (collectively, "the City defendants"); (2) defendants Sisters of Mercy/Mercy First

Fostercare Boarding Home ("Mercy First"), Deidre Reynolds ("Reynolds"), as director of Mercy

First, Andrea Lomax ("Lomax"), as caseworker for Mercy First, Jeanie Cambria ("Cambria"), an

employee of Mercy First, and Ira Eras, Esq., counsel for Mercy First (collectively, "the Mercy First defendants"); (3) defendant Stewart Altman ("Altman"), as law guardian for plaintiff's son; (4) defendant Erin Galvin, Esq. ("Galvin"), as law guardian for plaintiff's daughter; (5) defendant Debra Esernio-Jenssen, M.D. ("Jenssen"), i/s/h as Dr. Debra Ernersio-Jenssen; (6) *pro se* defendant Joseph Kasper, Esq. ("Kasper"); (7) a "John Doe" defendant; and (8) defendant Judge Linda Tally ("Judge Tally")[1]. Pending before the Court are: (1) the motions of the City defendants and the State defendants pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim, respectively; and (2) the motions of Galvin, Jenssen and the Mercy First defendants pursuant to Rule 12(b)(6) of the Federal Rules of Procedure to dismiss the amended complaint for failure to state a claim. For the reasons discussed herein, the motions are granted.

I.    BACKGROUND

A.    Factual Allegations[2]

Plaintiff is the mother of a son, born on September 16, 2001, and a daughter, born August 18, 1989. In October 2001, ACS commenced neglect proceedings under Article 10 of the New York State Family Court Act against plaintiff in the Family Court of the State of New York,

---

[1] Although not named in the caption of the complaint or amended complaint, the amended complaint contains allegations against the State of New York ("the State"), the Governor of the State of New York ("the Governor") and Judge Rhea G. Friedman ("Judge Friedman"). (Amended Complaint [Compl.], pp. 1-2). Counsel for Judge Tally has appeared and submitted a motion to dismiss on behalf of the State and those individuals as well. The State and those individuals, collectively with Judge Tally, will be referred to herein as "the State defendants."

[2] The factual allegations are taken from the complaint and exhibits annexed thereto, or from documents of which this Court may take judicial notice, and do not constitute findings of fact by the court.

County of Queens ("the Family Court"), (Declaration of Steven D. Weber [Weber Decl.], Exs. B and C), after plaintiff sought medical treatment for injuries her son allegedly sustained following an accident. (Compl., pp. 5, 9, 10). The only factual allegation in the complaint referencing Jenssen is that she was the pediatrician to whom plaintiff brought her son for medical treatment following the alleged accident. (Compl., p. 10).

On July 13, 2005, following fact-finding hearings, Judge Friedman issued a Fact-Finding Order, adjudging, *inter alia*, plaintiff's son to be an abused child, as defined in section 1012 of the New York State Family Court Act. (Weber Decl., Ex. D).

On October 11, 2005, following a preliminary hearing, Judge Friedman issued an order remanding plaintiff's son to the custody of ACS pending further proceedings in the Family Court. (Weber Decl., Ex. E).

On November 9, 2005, following a hearing, Judge Friedman issued another order remanding plaintiff's son to the custody of ACS pending further proceedings, finding that removing plaintiff's son from her custody was in the best interests of the child because plaintiff had been remanded to Elmhurst Hospital "due to erratic behavior in the waiting room," the child had previously been adjudicated an abused child and plaintiff "hid the child from ACS and provided false information where the child was located." (Weber Decl., Ex. F). Plaintiff alleges that Judge Friedman accused her of participating in a "prayer circle" in the vestibule of the Family Court; caused the "court room police" to seize her and take her to the "jail in the basement of the court room without any notice to [her] attorney;" and ordered her into psychiatric hospitalization at Elmhurst General Hospital for fourteen (14) days. (Compl., p. 3). According to plaintiff, as a result of the hospitalization, she missed a court proceeding "which took place

3

without [her] and resulted in the seizure by ACS of [her] two children * * *." (Compl., p. 3). Upon his removal from plaintiff's custody, plaintiff's son was placed in the care of Mercy First, a private, not-for-profit child care agency. Plaintiff alleges that once her son was "seized" by ACS, she was deprived of contact with him for ten (10) or eleven (11) months and was denied the "right to any pictures" of him. (Compl., pp. 3, 12, 13).

Plaintiff alleges that between June 2006 and March 2008, while in the care and custody of Mercy First, her son sustained injuries, including a fractured skull, fractured collar bone, "strange bites," redness of his nipples, bruises to his ankles, "injury marks" on his ears, limping, loss of four (4) front teeth and contusions on the side of his face, and had been "psychiatrically medicated." (Compl., pp. 10-11, 13). According to plaintiff, the Mercy First defendants have refused to release to her all records pertaining to the medical, dental, school and psychological treatment received by her son. (Compl., p. 11, 13).

Plaintiff alleges that on January 19, 2006, the Mercy First defendants falsely accused her of kidnapping her daughter after her daughter brought Christmas presents to her car "instead of travelling [sic] on the lonely, dark Far Rockaway crime ridden community to a train station by Mercy First location." (Compl., p. 4). According to plaintiff, the false accusations by the Mercy First defendants caused her to be absent from another court hearing. (Compl., p. 4). According to Kasper, who represented plaintiff during the neglect proceeding from on or about November 23, 2005 until or on about May 12, 2006, then again from on or about June 29, 2007 until on or about February 2, 2009, (Kasper's Answer [Ans.], ¶ 1), plaintiff was arrested on January 18, 2006 for allegedly kidnapping her daughter, (Ans., ¶ 7), but the charges were dismissed by the Queens County District Attorney's office prior to arraignment. (Compl., Ex. III).

4

Plaintiff alleges that in December 2007, her son was denied visitation with his relatives from out of state. (Compl., p. 13).

In or about March 2008, ACS filed a petition in the Family Court seeking to terminate plaintiff's parental rights.

On September 23, 2008, following a dispositional hearing, Judge Tally issued an Order of Disposition, *inter alia*, directing plaintiff's son to be placed in the custody of the Commissioner of Social Services of Queens County ("CSS") until the completion of the next permanency hearing scheduled for March 23, 2009; directing plaintiff to "engage in individual counseling with an individual therapist credentialed by a hospital" and to comply with all reasonable referrals stemming from such therapy; and permitting plaintiff to have "therapeutic visits" with her son "[w]hen the therapist deems appropriate." (Weber Decl., Ex. G). On that same date, Judge Tally issued a Permanency Hearing Order, *inter alia*, directing the continued placement of plaintiff's son in the custody of CSS until completion of the next permanency hearing because plaintiff had "failed to engage in mandated services and appropriate visitation;" directing CSS to continue planning for the adoption of plaintiff's son, but permitting CSS to concurrently plan for the son's reunification with plaintiff; directing that plaintiff's son be provided with individual therapy; permitting CSS to provide therapeutic visitation for plaintiff "when deemed appropriate by the attending therapist;" and directing CSS to continue supervised sibling visitation. (Weber Decl., Ex. H).

Plaintiff alleges that in May 2009, her request to have her son attend her graduation from Hofstra University was denied. (Compl., p. 13).

On September 29, 2009, Craig Ramseur, referee, issued a Permanency Hearing Order,

5

*inter alia*, finding that CSS had made "reasonable efforts to reach the goal of adoption" by filing a termination of parental rights petition and placing plaintiff's son in a pre-adoptive home; directing that plaintiff's son "continue to be temporarily removed in the custody of [CSS] until the completion of the next permanency hearing, scheduled for [March 22, 2010];" and directing plaintiff to have supervised visits with her son at "the agency" for two (2) hours every Thursday evening. (Weber Decl., Ex. H).

Plaintiff also alleges that at an unidentified time, a visit with her son was cancelled because she had sung a religious song to him during a prior visit. (Compl., p. 13).

B.      Procedural History

On May 16, 2008, plaintiff and her husband filed an action *pro se* in this Court against Mattingly, Reynolds, Altman, Galvin, Lomax and Mercy First, among others, challenging the placement of their son in foster care and plaintiff's involuntary confinement for psychiatric evaluation in November 2005, and seeking declaratory relief, compensatory damages and to regain custody of their son ("the 2008 action"). Allen v. Mattingly, No. 08-cv-2003. Plaintiff also claimed, *inter alia*, that her involuntary commitment in November 2005 violated her First Amendment right to practice her religion. By order entered June 19, 2008, *inter alia*: (1) plaintiff's claims seeking to regain custody of her son, for damages relating to the placement of her son in foster care and for a declaration that the placement of her son in foster care violated her constitutional rights were *sua sponte* dismissed for lack of subject matter jurisdiction; and (2) plaintiff's First Amendment claim was dismissed without prejudice for failure to state a claim, insofar as plaintiff failed to allege the personal involvement of any of the named defendants in

that constitutional violation. Plaintiff was granted leave to amend her complaint in the 2008 action to, *inter alia*, re-plead her First Amendment claim within thirty (30) days from the date of entry of that order and was advised that her failure to timely amend her complaint in accordance with that order would result in her First Amendment claim being deemed dismissed with prejudice. Plaintiff was granted an extension of time to file an amended complaint in accordance with that order until August 13, 2008. Plaintiff filed an amended complaint in the 2008 action on August 11, 2008, but she only asserted claims against Reynolds and Mercy First in her amended complaint. By order entered November 4, 2008, plaintiff's request to voluntarily withdraw her remaining claims in the 2008 action without prejudice was granted and the 2008 action was closed.

On February 16, 2010, plaintiff commenced this action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, against the City defendants, the Mercy First defendants, Altman, Galvin, Jenssen, Kasper and "John Doe." On February 17, 2010, plaintiff filed an amended complaint as of right against all defendants, alleging, *inter alia*, violations of her substantive and procedural due process rights and rights to free speech, equal protection of the law, to be free from cruel and unusual punishment and to a fair trial. Specifically plaintiff alleges, *inter alia*: (1) that her court-appointed attorneys in the Family Court proceedings, including defendant Kasper, conspired with the Mercy First defendants to deprive her of her rights to free speech, equal protection of the law and a fair trial, (Compl., pp. 2, 5, 9, 13); (2) that Judges Tally and Friedman (a) "acted with Judicial prejudice, impropriety, active interference with [her] ability to defend [her]self, by causing [her] to be unavailable for several court hearings because of causing [her] to be jailed,

7

hospitalized and not notified of hearings," (b) "precluded [her] from obtaining transcripts, * * * failed to notify [her] of court appearances and * * * failed to sign orders," and (c) were biased or partial against her, (Compl., pp. 2-3, 11); (3) that the Mercy First defendants falsely accused her of kidnapping her daughter, (Compl., p. 4); (4) that all of the defendants used "coercive psychiatry * * * to vilify [her], [and to] impeach [her] credibility, sanity [and] judgment," in violation of her Fifth Amendment due process rights and right against self incrimination, (Compl., pp. 4-6); (5) that the Mercy First defendants deprived her of her ability to visit her child and "willfully asserted their control with the accomplished task of keeping [her] from having [her] son returned to [her], as well as willfully covering injuries which * * * occurred in Mercy First foster care," (Compl., p. 5); (6) that defendants deprived her of her procedural due process rights by not providing her with notice of hearings and depriving her of her right to confront her accusers, (Compl., p. 5); (7) that the City defendants, the State defendants and the Mercy First defendants violated the procedures set forth in the Adoption and Safe Families Act of 1997 ("ASFA"), Pub. L. 105-89, 111 Stat. 2115 (1997) (amending 42 U.S.C. §§ 671-675), and the Child Abuse Prevention and Treatment Act of 1974 ("CAPTA"), 42 U.S.C. §§ 5101-5106a, (Compl., pp. 3, 5, 10); (8) that all of the defendants inflicted cruel and unusual punishment upon her by, *inter alia*, placing her in a position where she must drive nearly two (2) hours each way in order to visit her son, not producing her son or arriving "extremely late" for visitations and displaying "overt provocation of negligence in the care of [her son]," (Compl. p. 12); and (9) that Altman failed to report the injuries her son sustained while in the care and custody of the Mercy First defendants to the Family Court, (Compl., p. 13). In addition, plaintiff claims that defendants "eras[ed] tapes at an administrative hearing to exclude [her] testimony * * *," in

violation of RICO, 18 U.S.C. § 1512, and violated the obstruction of justice provision of 18 U.S.C. § 1513(b) by falsely charging her with child abuse, unlawfully imprisoning her on two (2) occasions and committing her to psychiatric hospitalization. (Compl., p. 12). Plaintiff further claims that because she is a foreigner and an alien, defendants treated her differently than United States citizens during the Family Court proceedings, (Compl., p. 13), and that defendants violated her constitutional right to practice her religion, (Compl., p. 14). Plaintiff also asserts claims in her amended complaint for malicious prosecution and intentional infliction of emotional distress. (Compl., p. 13).

Plaintiff seeks compensatory damages, punitive damages and treble damages pursuant to RICO, 18 U.S.C. §§ 1961, *et seq.*, in the amount of ten million dollars ($10,000,000.00) "for each charge alleged;" attorneys fees pursuant to 28 U.S.C. § 1988 and RICO; judgment declaring that her and her son's constitutional rights have been violated; mandatory injunctive relief directing the immediate return of her son to her care and custody and expungement of her "file" and mental health record; and the appointment of a special prosecutor "to investigate the RICO criminal action" of all defendants. (Compl., p. 8).

Pending before the Court are: (1) the motions of the City defendants and the State defendants pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim, respectively; and (2) the motions of Galvin, Jenssen and the Mercy First defendants pursuant to Rule 12(b)(6) of the Federal Rules of Procedure to dismiss the amended complaint for failure to state a claim.

II.    ANALYSIS

A.    12(b)(1)[3]

1.    Standard of Review

Federal courts are courts of limited jurisdiction, see Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 397 (2d Cir. 2009), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil, 545 U.S. at 552, 125 S.Ct. 2611 (holding that federal courts may not exercise jurisdiction absent a statutory basis); County of Nassau, N.Y. v. Hotels.com, LP, 577 F.3d 89, 91 (2d Cir. 2009) (holding that federal courts lack power to disregard the limits on their jurisdiction imposed by the Constitution or Congress). Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the court sua sponte. Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003); Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000); see also Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region, 130 S.Ct. 584, 596, 175 L.Ed.2d 428 (2009) ("[s]ubject-matter jurisdiction, * * * refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." (internal quotations and citations omitted)). If a court lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y &

---

[3] Since a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction, see Sinochem International Co. Ltd. v. Malaysia International Shipping Corp., 549 U.S. 422, 431, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007), I must necessarily decide the branches of the City defendants' and State defendants' motions seeking dismissal pursuant to Rule 12(b)(1) prior to rendering any determination on the branches of their motions seeking dismissal pursuant to Rule 12(b)(6), which requires a decision on the merits of the case.

H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009). "In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1055 (2d Cir.1993) (quoting Goldman v. Gallant Securities, Inc., 878 F.2d 71, 73 [2d Cir.1989]). Although when deciding a jurisdictional motion, the court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, Natural Resources Defense Council v. Johnson., 461 F.3d 164, 171 (2d Cir. 2006), it also may look beyond the allegations of the complaint and "examine evidence outside of the pleadings." Hamm v. U.S., 483 F.3d 135, 137 (2d Cir. 2007). The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. Id.

2.    The State Defendants' Motion

a.    Sovereign Immunity

The Eleventh Amendment to the United States Constitution bars suits seeking retroactive relief, including monetary damages, in a federal court by private parties against a state or one of its agencies, absent consent to suit or an express statutory waiver of immunity. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 362, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908). In addition, the Eleventh Amendment bars claims for retroactive relief against state officials when "the state is the real,

substantial party in interest." <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting <u>Ford Motor Co. v. Department of Treasury</u>, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed.2d 389 (1945), <u>overruled on other grounds by Lapides v. Board of Regents of University System of Georgia</u>, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)). "Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" <u>Id.</u> (quoting <u>State of Hawaii v. Gordon</u>, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963)).

Plaintiff's federal claims for monetary damages against the State defendants are barred by the Eleventh Amendment. <u>See</u>, <u>e.g.</u> <u>Halderman</u>, 465 U.S. at 120, 104 S.Ct. 900 (stating that if a lawsuit against state officials under 42 U.S.C. § 1983 alleges a constitutional claim, the federal court is barred by the Eleventh Amendment from awarding damages against the state treasury); <u>Ford v. Reynolds</u>, 316 F.3d 351, 354-5 (2d Cir. 2003) ("The Eleventh Amendment bars the award of money damages against state officials in their official capacities.") Plaintiff's contentions: (1) that the State defendants "should be deprived of Eleventh Amendment Immunity * * * as violations of Constitutional rights mitigate against defense by Constitutional Amendments," (Compl., p. 2); and (2) that the State defendants "cannot claim any immunity" because "the State Family Court accepts Federal funding" are without support in law and are meritless.

In addition, the declaratory judgment sought by plaintiff requests no more than an adjudication that the past conduct of the State defendants violated federal law. "[T]he Eleventh Amendment and the principles governing the issuance of declaratory judgments prohibit the award of a declaration that state officials' prior conduct violated federal law." <u>Rothenberg v.</u>

Stone, 234 F.Supp.2d 217, 221 (E.D.N.Y. 2002); see also Green v. Mansour, 474 U.S. 64, 65-66, 73, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). "'[A] declaratory judgment is not available when the result would be a partial '"end run" around' the Eleventh Amendment's bar on retrospective awards of monetary relief.'" Ward v. Thomas, 207 F.3d 114, 120 (2d Cir. 2000) (quoting Green, 474 U.S. at 73, 106 S.Ct. 423); see also Community Health Care Association of New York v. DeParle, 69 F.Supp.2d 463, 472 (S.D.N.Y. 1999) (accord). Since plaintiff's claim seeking a declaratory judgment is not based upon a "claimed continuing violation of federal law," Ward, 207 F.3d at 120, by the State defendants, her declaratory judgment claim against the State defendants is retroactive in nature and, thus, barred by the Eleventh Amendment. See, e.g. Boyland v. Wing, 487 F.Supp.2d 161, 180 (E.D.N.Y. 2007) (holding that absent a continuing violation of federal law by the state, claims for injunctive, compensatory or declaratory relief against state officials are barred by the Eleventh Amendment); Rothenberg, 234 F.Supp.2d at 221-222 (dismissing the plaintiff's Section 1983 claims on the basis, inter alia, that the plaintiff sought only retrospective declaratory relief, i.e. that the defendant's past conduct violated federal law).

Moreover, the Eleventh Amendment also bars suits in federal courts seeking relief, whether prospective or retroactive, against state officials for their alleged violation of state law. See Halderman, 465 U.S. 89, 106, 104 S.Ct. 900; Allen v. Cuomo, 100 F.3d 253, 260 (2d Cir. 1996); see also Carvel v. Cuomo, 357 Fed. Appx. 382, 383 (2d Cir. Dec. 21, 2009) ("[T]he Eleventh Amendment bars federal suits against state officials on the basis of state law.") Since plaintiff does not allege that the State defendants acted ultra vires, i.e. without the authority of law, see Florida Department of State v. Treasure Salvors, Inc., 458 U.S. 670, 696-697, 102 S.Ct.

13

3304, 73 L.Ed.2d 1057 (1982) (plurality opinion), any state law claims she asserts against the State defendants are also barred by the Eleventh Amendment.

Although the Eleventh Amendment would not bar claims against the State defendants in their individual capacity, see Hafer v. Melo, 502 U.S. 21, 31 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); Ford, 316 F.3d at 356, plaintiff's claims against the Governor are in his official capacity only.[4] Accordingly, the branch of the State defendants' motion seeking dismissal pursuant to 12(b)(1) of plaintiff's claims against the State, the Governor, and Judges Tally and Friedman in their official capacity is granted and the amended complaint is dismissed in its entirety without prejudice as against the State, the Governor and Judges Tally and Friedman in their official capacity.[5]

### b. Judicial Immunity

To the extent plaintiff asserts claims against Judge Tally and Judge Friedman in their individual capacity, those claims are barred by the doctrine of absolute judicial immunity.

Under the doctrine of absolute judicial immunity, judges are subject to suit seeking retroactive relief only for: (1) "non-judicial actions, i.e., actions not taken in the judge's judicial capacity;" or (2) "actions, though judicial in nature, taken in the complete absence of all

---

[4] Even if plaintiff asserts claims against the Governor in his personal capacity, those claims fail because she does not allege his personal involvement in any of the constitutional violations of which she complains. See Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)(holding that personal involvement of a defendant is a prerequisite for an award of damages under Section 1983).

[5] Plaintiff's only claim against the State and Governor is for failure to properly supervise the City defendants and Mercy First defendants. (Compl., pp. 1-2). Accordingly, plaintiff does not seek prospective or injunctive relief as against those defendants.

14

jurisdiction." <u>Mireles v. Waco</u>, 502 U.S. 9, 11-12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (internal citations omitted); <u>see</u> <u>Stump v. Sparkman</u>, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." <u>Mireles</u>, 502 U.S. at 11, 112 S.Ct. 286 (quoting <u>Stump</u>, 435 U.S. at 356, 98 S. Ct. 1099).

All of plaintiff's claims against Judge Tally and Judge Friedman relate to actions taken in their judicial capacity and plaintiff does not allege that either judge acted outside of her role as a judicial officer or that she was acting without jurisdiction. To the extent plaintiff seeks injunctive relief as against Judge Tally and Judge Friedman, such relief is not available under the Federal Courts Improvement Act of 1996, which amended Section 1983 to limit injunctive relief against a judicial actor to situations in which a declaratory decree was violated or where declaratory relief is unavailable. <u>See</u> <u>Huminski v. Corsones</u>, 396 F.3d 53, 74 (2d Cir. 2005); <u>Montero v. Travis</u>, 171 F.3d 757, 761 (2d Cir. 1999). Since plaintiff does not allege, *inter alia*, that Judge Tally or Judge Friedman violated a declaratory decree, any claim for injunctive relief against Judge Tally and Judge Friedman is dismissed without prejudice.

Moreover, absent any claim that Judge Tally and Judge Friedman acted in excess of their jurisdiction, plaintiff cannot state a Section 1988 claim against them. 42 U.S.C. § 1988(b). Thus, the branch of the State defendants' motion seeking dismissal of plaintiff's claims against Judge Tally and Judge Friedman in their individual capacity is granted and the amended complaint is dismissed in its entirety with prejudice as against Judge Tally and Judge Friedman in their individual capacity.

3.      The City Defendants' Motion

    a.      Rooker-Feldman

Pursuant to what is commonly known as the <u>Rooker-Feldman</u> doctrine, federal district

courts are prohibited from exercising subject matter jurisdiction over suits that are, in substance,

appeals from state-court judgments. <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 414-415, 44

S.Ct. 149, 68 L.Ed.2d 362 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S.

462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The <u>Rooker-Feldman</u> doctrine bars challenges in

federal court to the substance of state-court decisions which are more properly raised on appeal,

even where such challenges appear to raise questions of federal law on their face. <u>See Hoblock</u>

<u>v. Albany County Board of Elections</u>, 422 F.3d 77, 87 (2d Cir. 2005).

The Supreme Court has limited the application of the <u>Rooker-Feldman</u> doctrine to "cases

brought by state-court losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commenced and inviting district court review and rejection

of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 284,

125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); <u>see also Skinner v. Switzer</u>, ___ S.Ct. ___, 2011 WL

767703, at * 7 (Mar. 7, 2011); <u>Lance v. Dennis</u>, 546 U.S. 459, 126 S.Ct. 1198, 1201, 163

L.Ed.2d 1059 (2006)(emphasizing the narrowness of the <u>Rooker-Feldman</u> rule). Thus, there are

four (4) requirements for the application of the <u>Rooker-Feldman</u> doctrine: (1) the party raising

the claim must have lost in state court; (2) that party's injuries must be caused by the state court

judgment; (3) that party's claims must invite the district court to review and reject the state court

judgment; and (4) the state court judgment must have been rendered prior to the commencement

of the federal court proceedings. <u>See McKithen v. Brown</u>, 626 F.3d 143, 154 (2d Cir. 2010);

16

Morrison v. City of New York, 591 F.3d 109, 112 (2d Cir. 2010) (citing Hoblock, 422 F.3d at 85). The first and fourth requirements are "procedural," while the second and third requirements are "substantive." Morrison, 591 F.3d at 112 (citing Hoblock, 422 F.3d at 85).

All four factors for application of the Rooker-Feldman doctrine are satisfied with respect to plaintiff's claims relating to the custody of her son: (1) plaintiff lost custody of her son in state court pursuant to both temporary and final orders of the Family Court, see, e.g N.Y. Family Court Act § 1112(a) (allowing an appeal as of right from any order of disposition); Matter of Yamoussa M., 220 A.D.2d 138, 142, 646 N.Y.S.2d 319 (1st Dept. 1996) ("An 'order of disposition' is synonymous with a final order or judgment" (quoting Firestone v. Firestone, 44 A.D.2d 671, 672, 354 N.Y.S.2d 645 (1st Dept. 1974)); (2) she complains of injury caused by the state court orders, i.e., her "alleged injuries from the removal of [her] child did not exist 'prior in time to the [Family Court] proceedings;' rather, they were 'caused by' the Family Court's * * *order[s]," Green v. Mattingly, 585 F.3d 97, 102 (2d Cir. 2009) (quoting McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007)); (3) her claims invite this Court to review and reject the state Family Court's determinations to remove her son from her custody and to place him in the custody of a foster care agency, which have not otherwise been vacated, i.e., her son has not been returned to her custody[6]; and (4) the state court's determinations to remove her son from her custody and place him in foster care were rendered prior to the commencement of this action. Accordingly, the

---

[6] This action is, thus, distinguishable from Green, 585 F.3d at 102. In Green, the Second Circuit found, inter alia: (1) that the plaintiff was not a state court "loser" because the temporary order of removal was superceded by an order, entered four (4) days later, returning the child to the plaintiff's custody and there was no final order of disposition pursuant to N.Y. Family Court Act § 1052; and (2) that the plaintiff's claims did not invite review and rejection of a state court judgment because the child had already been returned to the plaintiff.

Rooker-Feldman doctrine divests this Court of subject matter jurisdiction to hear plaintiff's

claims relating to the removal of her son from her custody, his placement in foster care and her

visitation with her son. See, e.g. Phifer v. City of New York, 289 F.3d 49, 57 (2d Cir. 2002)

(holding that the plaintiff's claims seeking an order directing ACS to return plaintiff's child to

her custody were barred by the Rooker-Feldman doctrine); Johnson v. Queens Admin. for

Children's Services, No. 02-CV-4497, 2006 WL 229905, at * 3, n. 2 (E.D.N.Y. Jan. 31, 2006)

(finding that pursuant to the Rooker-Feldman doctrine, the Court lacked subject matter

jurisdiction to address issues dealing with child custody, neglect and visitation), aff'd, 197 Fed.

Appx. 33 (2d Cir. Sept. 6, 2006); Puletti v. Patel, No. 05 CV 2293, 2006 WL 2010809, at * 5

(E.D.N.Y. July 14, 2006) (finding that the plaintiff's claims alleging constitutional violations

stemming from the defendants reducing his custody time with his son during a state court

proceeding were barred by the Rooker-Feldman doctrine because they were nothing more than an

attempt to have the federal court overturn the custody arrangement entered into in state court);

Ellis v. Little Flower Children's Services, No. CV 99-0503, 2000 WL 516887, at * 5 (E.D.N.Y.

Mar. 1, 2000) (finding that any award of damages on plaintiff's claim challenging the transfer of

her children from her custody to that of the defendant adoption agency would require the district

court to find that the state court wrongly decided the custody issues before it, and, thus, that

claim was barred by the Rooker-Feldman doctrine). Therefore, the branch of the City

defendants' motion seeking dismissal pursuant to Rule 12(b)(1) of plaintiff's claims relating to

the custody of, and visitation with, her son for lack of subject matter jurisdiction is granted and

those claims, including plaintiff's claims seeking the immediate return of her son to her custody

and a declaration that her constitutional rights have been violated by the removal of her son from

her custody and his placement into the custody of ACS[7], are dismissed in their entirety without prejudice for lack of subject matter jurisdiction.[8]

        b.     CAPTA Claims

CAPTA does not create a private right of action enforceable under Section 1983. See, e.g. Daniels v. Murphy, No. 06-CV-5841, 2007 WL 1965303, at * 2 n. 4 (E.D.N.Y. July 2, 2007); Alger v. County of Albany, N.Y., 489 F.Supp.2d 155, 159 (N.D.N.Y. 2006); Doe by Fein v. District of Columbia, 93 F.3d 861, 865 (D.C. Cir. 1996); Tony L. by and through Simpson v. Childers, 71 F.3d 1182, 1189 (6th Cir. 1995). Accordingly, the branch of the City defendants' motion seeking dismissal pursuant to Rule 12(b)(1) of plaintiff's CAPTA claims is granted and those claims are dismissed in their entirety without prejudice for lack of subject matter jurisdiction.

---

[7] To the extent plaintiff seeks a declaration that her son's constitutional rights were violated, she lacks standing to bring that claim, see, e.g. JG & PG ex rel. JGIII v. Card, 08 Civ. 5668, 2009 WL 2986640, at * 6 (S.D.N.Y. Sept. 17, 2009); Rodenhouse v. Palmyra-Macedon Central School Dist., No. 07-CV-6438, 2008 WL 2331314, at * 3 (W.D.N.Y. June 3, 2008); Phillips ex rel. Green v. City of New York, 453 F.Supp.2d 690, 734 (S.D.N.Y. 2006), and that same claim was dismissed on the merits with prejudice in the 2008 action. Accordingly, plaintiff cannot maintain such a claim here. See Merrill v. Town of Addison, 763 F.2d 80, 83 (2d Cir. 1985) ("A 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties.'" (quoting Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979))).

[8] In light of this determination, it is unnecessary to consider the City defendants' remaining contentions seeking dismissal of plaintiff's claims relating to her son's custody for lack of subject matter jurisdiction.

### 4. Standing

"[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); see also Esposito v. New York, 355 Fed. Appx. 511, 512-3 (2d Cir. Dec. 8, 2009). Accordingly, plaintiff lacks standing to ask this Court to order the investigation or prosecution of a RICO criminal action against defendants. See, e.g. Tia v. Criminal Investigation Demand as Set Forth, No. 10-00383, 2010 WL 3064472, at * 3 (D. Hawai'i Aug. 5, 2010) (hoding that the plaintiff lacked standing to ask the court to order the investigation or prosecution of any individual under the criminal provisions of the RICO Act). Therefore, plaintiff's claim seeking the appointment of a special prosecutor to investigate the RICO criminal action of all defendants is *sua sponte* dismissed without prejudice for lack of subject matter jurisdiction.

### B. 12(b)(6)

#### 1. Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119-20 (2d Cir. 2010)(accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550

U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct.

1955). "Factual allegations must be enough to raise a right to relief above the speculative level,

on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer

possibility that defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the

claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences

in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Chambers

v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)); see also Ruston v. Town Board for

Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010), cert. denied, 131 S.Ct. 824, 178 L.Ed.2d

556 (2010) ("When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief.")

However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at

1949. "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." Id. at 1950; see also Ruston, 610 F.3d at 59 ("A court can

choose to begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth." (quotations and citations omitted)). Nonetheless, a plaintiff

is not required to plead "specific evidence or extra facts beyond what is needed to make the claim

plausible." Arista Records, 604 F.3d at 120-1.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)); see also DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006). Accordingly, I have considered the pleadings, decisions and orders in the Family Court proceedings for the sole purpose of establishing the fact of those litigations and the claims raised therein.

2.      Statute of Limitations

The City defendants and Jenssen contend that plaintiff's claims pursuant to Sections 1983, 1985 and 1986 and RICO, and state law claims, are barred by the applicable statute of limitations. The Mercy First defendants also contend that plaintiff's Section 1983 claims are time-barred.

a.      Section 1983 and 1985 Claims

Claims pursuant to 42 U.S.C. §§1983 and 1985 are governed by New York's three (3) year statute of limitations. See Owens v. Okure, 488 U.S. 235, 249-250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). Although state

law governs the applicable limitations period, federal law governs when a federal claim accrues. See Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999). Generally, under federal law, a claim accrues when "the plaintiff has 'a complete and present cause of action,' * * *, that is, when 'the plaintiff can file suit and obtain relief.'" Wallace, 549 U.S. at 388, 127 S.Ct. 1091 (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc., 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997)); see also Merck & Co., Inc. v. Reynolds, 130 S.Ct. 1784, 1793, 176 L.Ed.2d 582 (2010) ("[T]he general limitations rule [is] that a cause of action accrues once a plaintiff has a 'complete and present cause of action.'") "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." Wallace, 549 U.S. at 391, 127 S.Ct. 1091.

Plaintiff's Section 1983 and 1985 claims against Jenssen accrued in 2001, when Jenssen allegedly treated plaintiff's son following the "accident" which ultimately resulted in his removal from plaintiff's custody. Since plaintiff did not commence this action until 2010, almost nine (9) years later, and has not established any basis for equitable tolling of the statute of limitations, the branch of Jenssen's motion seeking dismissal of plaintiff's Section 1983 and 1985 claims against her is granted and those claims are dismissed in their entirety with prejudice as against Jenssen.[9]

---

[9]  Although federal courts also apply a state's tolling rules, unless those rules would "defeat the goals of the federal statute at issue," Pearl, 296 F.3d. at 80; see also Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007), New York's "savings statute", N.Y. C.P.L.R. § 205(a), is not applicable to toll the statute of limitations during the pendency of the 2008 action because, inter alia, plaintiff voluntarily discontinued the 2008 action and did not commence this action within six (6)

Similarly, plaintiff's Section 1983 and 1985 claims relating to conduct occurring during the abuse proceedings between October 2001 and February 15, 2007, and to acts or omissions that occurred prior to February 16, 2007, more than three years prior to her commencement of this action, are time-barred. Accordingly, the branches of the City defendants' and the Mercy First defendants' motions seeking dismissal pursuant to Rule 12(b)(6) of plaintiff's Section 1983 and 1985 claims based upon conduct occurring prior to February 16, 2007 is granted and those claims are dismissed in their entirety with prejudice as time-barred.[10]

i.    Conspiracy Claims

For claims alleging civil conspiracies, including conspiracies to violate an individual's civil rights, "the cause of action accrues and the statute of limitations begins to run from the time of commission of the overt act alleged to have caused damages." Chodos v. Federal Bureau of Investigation, 559 F.Supp. 69, 74 (S.D.N.Y. 1982), aff'd, 697 F.2d 289 (2d Cir. 1982); see also Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980) (holding that the statute of

_____

months after the 2008 action was terminated. In any event, the 2008 action was only pending for approximately four (4) months, so plaintiff's claims against Jenssen would be time-barred regardless.

[10] Plaintiff's claims occurring after February 16, 2007 include: (1) that her son sustained injuries while in the care of Mercy First; (2) that the Mercy First defendants refused to release to her all of the records regarding treatment her son received while in the care of Mercy First; (3) that her son was denied visitation with out-of-state relatives in December 2007; and (4) that her son was not permitted to attend her graduation in May 2009. However, plaintiff's claims regarding visitation are dismissed pursuant to the Rooker-Feldman doctrine and, in any event, plaintiff lacks standing to assert the claim that her son was deprived of visitation with his out-of-state relatives. Since plaintiff does not allege any specific conduct occurring between February 16, 2007 and June 16, 2007, the issue of whether the statute of limitations was tolled during the four (4) months that the 2008 action was pending need not be decided here.

limitations accrues at the time of the wrongful act and that the existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs); Afshar v. Procon Inc., 442 F.Supp. 887, 891 (S.D.N.Y. 1977), aff'd, 580 F.2d 1044 (2d Cir. 1978) (holding that the statute of limitations for civil conspiracy claims commences to run upon the commission of the overt act causing damage). Although plaintiff does not identify any specific overt act committed as part of the alleged conspiracy, her Section 1983 and 1985 conspiracy claims are clearly based upon acts and omissions occurring prior to February 16, 2007, since the only timely remaining claims are against the Mercy First defendants for the care plaintiff's son received while in their custody and their refusal to release all of the son's records to plaintiff, and against unspecified defendants for the one-time refusal to allow her son to attend her graduation. Accordingly, plaintiff's Section 1983 and 1985 conspiracy claims are dismissed in their entirety with prejudice as time-barred.

> b.    Section 1986 Claim

Unlike Sections 1983 and 1985, which borrow their statute of limitations from the limitations period applicable to analogous state law claims, Section 1986 expressly provides for a one (1) year limitation period from when the cause of action has accrued. 42 U.S.C. § 1986; see Paige v. Police Department of City of Schenectady, 264 F.3d 197, 199 n. 2 (2d Cir. 2001); Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). Thus, plaintiff's Section 1986 claims against Jenssen are dismissed in their entirety with prejudice as time-barred.

Moreover, all of plaintiff's Section 1986 claims against the remaining defendants, with

the exception of her claim that her son was not permitted to attend her graduation in May 2009, are based on conduct occurring prior to February 16, 2009. Thus, plaintiff's Section 1986 claims, with the exception of her claim that her son was not permitted to attend her graduation in May 2009, are dismissed with prejudice as time-barred.

c.    RICO Claims

The statute of limitations for a claim pursuant to RICO's civil enforcement provision, 18 U.S.C. § 1964(c)[11], is four (4) years, Agency Holding Corp. v. Malley-Duff & Associations, Inc., 483 U.S. 143, 157, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), running from the date the plaintiff discovered, or should have discovered, the RICO injury, not from the date the plaintiff discovered, or should have discovered, the underlying pattern of racketeering activity. See Rotella v. Wood, 528 U.S. 549, 554, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000); Frankel v. Cole, 313 Fed. Appx. 418, 419-420 (2d Cir. Mar. 4, 2009). Since plaintiff's RICO claims pertain only to the filing of the neglect proceeding against her, her imprisonments and her hospitalization, all of which occurred prior to February 16, 2006, and plaintiff undoubtedly knew of the injuries she sustained as a result of such conduct as of the date those acts occurred, plaintiff's RICO claims are time-barred. Accordingly, the branches of Jenssen's and the City defendants' motions seeking dismissal pursuant to Rule 12(b)(6) of plaintiff's RICO claims are granted and those

---

[11] Although plaintiff refers to 18 U.S.C. §§ 1512 and 1513 in her amended complaint, those provisions are strictly criminal and do not give rise to a civil action. Accordingly, plaintiff's RICO claims are construed as being brought pursuant to the civil enforcement provisions, 18 U.S.C. §§ 1961-1968.

claims are dismissed in their entirety with prejudice as time-barred.[12]

### d. Intentional Tort Claims

Under New York law, the statute of limitations for intentional tort claims, i.e., malicious prosecution and intentional infliction of emotional distress, is one (1) year. N.Y. C.P.L.R. § 215(3). Since all of plaintiff's intentional tort claims involve conduct occurring prior to February 16, 2009, those claims are dismissed as time-barred.[13]

### 3. Section 1983 Claims

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any citizen of the United States... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws

---

[12] In any event, plaintiff's RICO claim is without merit insofar as, *inter alia*, she fails to claim any factual allegations from which the existence of an "enterprise" within the meaning of 18 U.S.C. § 1961(4) or a pattern of racketeering activity can be inferred, and she fails to explain each participant's role in the alleged course of fraudulent or illegal conduct. See First Capital Asset Management v. Satinwood, Inc., 385 F.3d 159, 173-182 (2d Cir. 2004); see also Peterec-Tolino v. New York, 364 Fed. Appx. 708, 711 (2d Cir. Feb. 8, 2010); Knoll v. Schectman, 275 Fed. Appx. 50, 51 (2d Cir. Apr. 25, 2008).

[13] Since all of the claims against Jenssen are dismissed as time-barred, it is unnecessary to address Jenssen's remaining contention.

of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010), cert. denied sub nom

Cornejo v. Monn, 131 S. Ct. 158, 178 L.Ed.2d 243 (2010), (quoting Pitchell v. Callan, 13 F.3d

545, 547 (2d Cir. 1994)); see also Briscoe v. LaHue, 460 U.S. 325, 329-330, 103 S.Ct. 1108, 75

L.Ed.2d 96 (1983).

### a. Personal Involvement

The City defendants, Mercy First defendants and Galvin contend that plaintiff's Section

1983 claims against them must be dismissed because plaintiff fails to allege their personal

involvement in the alleged constitutional deprivations.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." Back v. Hastings on Hudson Union Free

School Dist., 365 F.3d 107, 122 (2d Cir. 2004)(internal quotations and citation omitted); see also

Platt v. Incorporated Village of Southampton, 391 Fed. Appx. 62, 65 (2d Cir. Aug. 30, 2010);

Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 254-5 (2d Cir. 2001). "Personal

involvement" may be established by evidence of direct participation by the plaintiff in the

challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action

after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the

unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or

(4) deliberate indifference to the rights of others by failing to act on information regarding the

unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d

Cir. 2003); see also Rolon v. Ward, 345 Fed. Appx. 608, 611 (2d Cir. Sept. 4, 2009). "The fact

that [a defendant] was in a high position of authority is an insufficient basis for the imposition of

personal liability." <u>Al-Jundi v. Estate of Rockefeller</u>, 885 F.2d 1060, 1065 (2d Cir. 1989); <u>see</u>

<u>also</u> <u>Back</u>, 365 F.3d at 127. A complaint based on a violation under Section 1983 that does not

allege the personal involvement of a defendant fails a matter of law. <u>See</u> <u>Rosa R. v. Connelly</u>,

889 F.2d 435, 437 (2d Cir. 1989); <u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 886 (2d Cir. 1987);

<u>see</u> <u>also</u> <u>Johnson v. Barney</u>, 360 Fed. Appx. 199, 2010 WL 93110, at * 1 (2d Cir. Jan. 12, 2010)

(finding that the plaintiff's claims against the Superintendent failed as a matter of law because

the plaintiff did not sufficiently allege his personal involvement in the alleged constitutional

violation).


          i.     The City Defendants

      Plaintiff does not specifically name or identify any of the City defendants anywhere in the

body of her complaint, although her reference to the "Queens prosecutor for ACS" presumably

refers to Sukol. (Compl., p. 3). With respect to that one claim, plaintiff alleges only that the

"Queens prosecutor for ACS" took actions in the Family Court abuse proceedings "in violation

of the guidelines of * * * ASFA and CAPTA." (<u>Id.</u>). However, as noted above, any such Section

1983 claim against Sukol is time-barred, since the conduct of which plaintiff complains occurred

prior to February 16, 2007. Since plaintiff does not plead any factual allegations plausibly

suggesting, *inter alia*, that Mattingly, Campbell or Sukol were personally involved, either

directly or in a supervisory capacity, in any of the constitutional violations alleged in the

complaint that occurred on or after February 16, 2007, the branch of the City defendants' motion

seeking dismissal pursuant to Rule 12(b)(6) of plaintiff's Section 1983 claims against them is

granted and plaintiff's Section 1983 claims against those defendants are dismissed without

prejudice for failure to state a claim.[14]

Moreover, to the extent plaintiff asserts claims against the City defendants in their official capacity, such claims are deemed to be claims against the ACS, which lacks the capacity to sue or be sued. See, e.g. Emerson v. City of New York, 740 F.Supp.2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."); Johnson v. New York, No. 04-CV-1070, 2007 WL 764514, at * 5 (E.D.N.Y. Mar. 9, 2007), aff'd, 283 Fed. Appx. 877 (2d Cir. Jul. 30, 2008). Rather, "the City is generally the proper defendant when a plaintiff seeks to bring an action pursuant to the official acts and/or inaction of an agency of the City." Emerson, 740 F.Supp.2d at 395-6; see N.Y. City Charter, Ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency. . . .") Therefore, the branch of the City defendants' motion seeking dismissal of plaintiff's claims against them in their official capacity is granted and those claims are dismissed in their entirety with prejudice.[15]

---

[14] In light of this determination, it is unnecessary to consider the City defendants' contention that Sukol is entitled to absolute immunity with respect to plaintiff's Section 1983 claim against her.

[15] Even construing plaintiff's Section 1983 claims against the City defendants in their official capacity as claims against the City, her claims must be dismissed because plaintiff does not allege "an injury to a constitutionally protected right * * * that * * * was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy." Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (internal quotations and citation omitted); see also Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-1, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008), cert. denied, 130 S.Ct. 95, 175 L.Ed.2d 234 (2009). Plaintiff does not allege: (1) the existence of a formal policy which is officially endorsed by the City; (2) actions taken or decisions made by City officials with final decision making authority which caused the alleged violations of her civil rights; (3) a City practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of policymaking officials; or (4) a failure by City policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal

ii.    Galvin

Plaintiff does not refer to Galvin anywhere in the body of the amended complaint, except

to identify her as the law guardian for her daughter.  Since plaintiff does not plead any factual

allegations plausibly suggesting that Galvin was personally involved in any of the constitutional

violations alleged in the complaint, the branch of Galvin's motion seeking dismissal pursuant to

Rule 12(b)(6) of plaintiff's Section 1983 claims against her is granted and plaintiff's Section

1983 claims against Galvin is dismissed without prejudice for failure to state a claim.


iii.    The Mercy First Defendants

Similarly, plaintiff does not allege the personal involvement of any of the individual

Mercy First defendants with the exception of Eras.[16]  Accordingly, the branch of the Mercy First

defendants' motion seeking dismissal pursuant to Rule 12(b)(6) of plaintiff's Section 1983

claims against Reynolds, Cambria and Lomax are granted and plaintiff's Section 1983 claims

---

employees.  See, e.g. Sulehria v. City of New York, 670 F.Supp.2d 288, 320 (S.D.N.Y. 2009).

[16]  With respect to Eras, plaintiff alleges: (1) that he violated her right to a fair trial by objecting
to her firing Kasper during the Family Court proceedings, (Compl., p. 13); (2) that he actively
colluded with her attorneys and ACS to deprive her of her rights, inter alia, to free speech, equal
protection and "access to the means for legal protection," (Compl., p. 2); (3) that he "personally
[took] a vendetta like [sic] stance to preclude [her] rights in multiple venues," (id.); (4) that he
and Judge Tally "[stood] as supervising mental health experts" in the Family Court, (Compl., p.
5); (5) that he "demand[ed] that [she] admit to charges that [she] adamantly den[ies], (id.); (6)
that he insists that she "must undergo 'therapy' through Mercy First programs," which constitutes
" an attempt at mind control, brain washing, incursions into [her] free speech and freedom of
thought," (id.); and (7) that he "dictated time and again what [her] mental health parameters for
certification of [her] mental health should be," (Compl., p. 10).  Plaintiff's first two (2)
allegations are time-barred and this Court is deprived of subject matter jurisdiction over the
fourth, sixth and seventh allegations pursuant to Rooker-Feldman since, inter alia, the Family
Court orders directed the therapy challenged by plaintiff.

31

against those Mercy First defendants are dismissed without prejudice for failure to state a claim.

> b.      Under Color of State Law

Section 1983 liability may only be imposed upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)(citation omitted).

> i.      Galvin, Altman and Kasper

Generally, attorneys, whether with the Legal Aid Society, court-appointed or privately retained, are not state actors for purposes of Section 1983. See Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); see also Krug v. McNally, 368 Fed. Appx. 269, 269 (2d Cir. Mar. 8, 2010) (affirming dismissal of Section 1983 claims against privately retained attorneys who represented the plaintiff in criminal proceeding on basis that attorneys were not state actors); Brown v. Legal Aid Society, 367 Fed. Appx. 215, 216 (2d Cir. Feb. 23, 2010) (holding that a public defender does not act under color of sate law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding). Law guardians appointed by the Court also are not state actors for purposes of Section 1983. See, e.g. Arena v. Department of Social Services of Nassau County, 216 F.Supp.2d 146, 154 (E.D.N.Y. 2002); Elmasri v. England, 111 F.Supp.2d 212, 221 (E.D.N.Y. 2000). Accordingly, Galvin, Altman and Kasper are not state actors subject to liability under Section 1983.

Nevertheless, liability may be imposed under Section 1983 upon private individuals who

are not state actors pursuant to a conspiracy theory. See Ciambriello v. County of Nassau, 292 F.3d 307, 324-325 (2d Cir. 2002). In order to state a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello, 292 F.3d at 324-325; see also Ostensen v. Suffolk County, 236 Fed. Appx. 651, 653 (2d Cir. May 23, 2007). Vague, conclusory and general allegations of conspiracy are insufficient to state a claim under Section 1983. See Ciambriello, 292 F.3d at 324; Krug, 368 Fed. Appx. at 269-70; Finnan v. Ryan, 357 Fed. Appx. 331, 333 (2d Cir. Dec. 17, 2009), cert. denied, 131 S.Ct. 280, 178 L.Ed.2d 250 (2010). Although plaintiff generally alleges a conspiracy amongst defendants, i.e. that there was "active collusion" between Eras, her attorneys and ACS to deprive her of her constitutional rights, (Compl., p. 2), she does not allege any overt act taken in furtherance of that purported conspiracy.[17] Accordingly, plaintiff's Section 1983 claims are dismissed in their entirety without prejudice as against Galvin, Altman and Kasper for failure to state a claim.

Moreover, since the complaint contains only vague and general allegations of a conspiracy insufficient to state a claim under Sections 1983 and 1985, the branch of the Mercy defendants' motion seeking dismissal of plaintiff's conspiracy claims is granted and plaintiff's Section 1983 and 1985 conspiracy claims are dismissed in their entirety without prejudice as against all defendants for failure to state a claim.[18]

---

[17] In any event, for the reasons set forth above, plaintiff's conspiracy claims are time-barred.

[18] In addition, in order to state a claim under Section 1985, a plaintiff must allege "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Palmieri v. Lynch, 392 F.3d 73, 86 (2d Cir. 2004) (citing Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999)); see also Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007).

ii.    Mercy First

The Mercy First defendants contend that since Mercy First is a not-for-profit human service agency, it is not a "state actor" for purposes of Section 1983.

"[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"[19] Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). "The actions of nominally private entities are attributable to the state when those actions meet one of three tests: 1. The 'compulsion test:' 'the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state,' 2. The 'public function' test:' 'the entity "has been delegated a public function by the [s]tate,"' or, 3. The 'joint action test' or 'close nexus test:' 'the state provides, "*significant encouragement*" to the entity, the entity is a "willful participant in *joint activity* with the [s]tate," or the entity's functions are "*entwined*" with state policies.'" Hollander v. Copacabana Nightclub, 624 F.3d 30, 34 (2d Cir. 2010), cert. denied, 131 S.Ct. 914, 178 L.Ed.2d 751 (2011) (emphasis and alterations in original) (quoting Sybalski v. Independent Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (per curiam)); see Brentwood Academy, 531

───────────────

Plaintiff has not alleged that any such discriminatory animus motivated the purported conspiracy. Moreover, since a section 1986 claim must be predicated upon a valid section 1985 claim, see Thomas, 165 F.3d at 147; Posr v. Court Officer Shield No. 207, 180 F.3d 409, 419 (2d Cir. 1999), plaintiff's Section 1986 is also dismissed in its entirety for failure to state a claim.

[19] "If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes." Brentwood Academy, 531 U.S. at 295 n. 2, 121 S.Ct. 924; see also Tancredi v. Metropolitan Life Ins. Co., 378 F.3d 220, 229 (2d Cir. 2004).

U.S. at 296, 121 S.Ct. 924. Under the "public function" test, state action is demonstrated when "the function performed has been 'traditionally the *exclusive* prerogative of the State.'" <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (emphasis in original) (quoting <u>Jackson</u>, 419 U.S. at 353, 95 S.Ct. 449); <u>see also</u> <u>Cooper v. U.S. Postal Service</u>, 577 F.3d 479, 492 (2d Cir. 2009), <u>cert. denied sub nom</u> <u>Sincerely Yours, Inc. v. Cooper</u>, 130 S.Ct. 1688, 176 L.Ed.2d 180 (2010).

Contrary to the Mercy First defendants' contention, courts in this Circuit have consistently held that private institutions authorized by New York Social Services Law to act on behalf of the State to care for children alleged to have been neglected are "state actors" for purposes of Section 1983 pursuant to the "public function" test so long as "there is a nexus between the public function being performed and the specific acts which are alleged to be objectionable." <u>Perez v. Sugarman</u>, 499 F.2d 761, 765 (2d Cir. 1974) ("In accepting and retaining custody of children alleged to have been 'neglected' or 'abandoned,' child-caring institutions [authorized by New York Social Services Law] * * * perform a 'public function.'"); <u>see, e.g.</u> <u>Phillips ex rel. Green v. City of New York</u>, 453 F.Supp.2d 690, 737 (S.D.N.Y. 2006) (holding that private child care agencies act under color of state law for purposes of Section 1983 if they are authorized by New York Social Services Law to care for neglected children and they perform actions relevant to those duties, i.e., the claims relate to the agency's acceptance and care of a child placed with the agency by the City, but the State and City remain ultimately responsible for the child's welfare and the agency's decisions are directly circumscribed by State and/or City regulations); <u>Vega v. Fox</u>, 457 F.Supp.2d 172, 182 (S.D.N.Y. 2006) ("In the context of government services such as foster care and mental health care, the Second Circuit has long

held that 'private entities may be considered to be infused with "state action" if those private entities are performing a function public or governmental in nature and which would have to be performed by the Government but for the activities of the private parties.'") Since the remaining acts of which plaintiff complains on the part of Mercy First involve its acceptance of plaintiff's son from the City and the subsequent care of plaintiff's son while in its custody, Mercy First is a "state actor" for the purposes of Section 1983.[20]

To the contrary, there is no nexus between the acts of Eras of which plaintiff complains and Mercy First's public function of providing care to plaintiff's son. Rather, plaintiff's claims against Eras relate to his conduct toward her during the Family Court proceedings in his capacity as counsel for Mercy First, a function far from being within the exclusive prerogative of the state. Accordingly, Eras, as counsel for Mercy First, was not a "state actor" for purposes of Section 1983. Therefore, the branch of the Mercy defendants' motion seeking dismissal of plaintiff's Section 1983 claims against Eras is granted and those claims are dismissed in their entirety without prejudice as against Eras for failure to state a claim.

c.    Immunity

Galvin and Altman are also entitled to absolute quasi-judicial immunity for actions taken

---

[20] Nevertheless, since liability under Section 1983 cannot be based on *respondeat superior*, see Monell, 436 U.S. at 694, 98 S.Ct. 2018; Jett v. Dallas Independent School District, 491 U.S. 701, 736, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), and since plaintiff has not alleged a policy or custom on the part of Mercy First pursuant to Monell, the amended complaint fails to state a viable claim under Section 1983 against Mercy First. See, e.g. Whalen v. Allers, 302 F.Supp.2d 194, 202-3 (S.D.N.Y. 2003) (holding that a private corporate employer found to be a "state actor" for purposes of Section 1983 cannot be held vicariously liable under Section 1983 since "there is no tenable reason[] to distinguish a private employer from a municipality.") Accordingly, plaintiff's remaining Section 1983 claims against Mercy First are dismissed without prejudice.

within the scope of their appointment as law guardian for plaintiff's children. See Yapi v. Kondratyeva, 340 Fed. Appx. 683, 685 (2d Cir. July 10, 2009); Wilson v. Wilson-Polson, No. 09 Civ. 9810, 2010 WL 3733935, at * 7 (S.D.N.Y. Sept. 23, 2010); Dowlah v. Dowlah, No. 09-CB-2020, 2010 WL 889292, at * 7 (E.D.N.Y. Mar. 10, 2010); Bluntt v. O'Connor, 291 A.D.2d 106, 116-7, 737 N.Y.S.2d 471 (4th Dept. 2002) (citing cases). Since all of the actions of which plaintiff complains on the part of Galvin and Altman occurred within the scope of their appointment as law guardian for plaintiff's children, and there are no factual allegations in the complaint indicating that Galvin or Altman engaged in any criminal conduct or other intentional tort, the branch of Galvin's motion seeking dismissal of plaintiff's claims against her are granted and the claims against Galvin and Altman are dismissed in their entirety with prejudice.

4.    ASFA Claims

The City defendants contend that plaintiff's ASFA claim should be dismissed for failing to comply with the pleading requirement of Rule 8(a) of the Federal Rules of Civil Procedure. The Mercy First defendants contend that plaintiff's malicious prosecution and intentional infliction of emotional distress claims must also be dismissed pursuant to Section 8(a).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings must give "fair notice of what the . . . claim is and the grounds upon which it rests" to enable the opposing party to answer and prepare for trial, and identify the nature of the case. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); see also Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1

37

(2002). When a complaint fails to satisfy the Rule 8 pleading standard, a district court may dismiss the complaint on motion or *sua sponte*. <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995).

Plaintiff's ASFA claim fails to comply with the liberal pleading requirement of Rule 8(a)(2) insofar as, *inter alia*, plaintiff fails to allege what section(s) of that statute defendants allegedly violated or any factual allegations upon which that claim rests. Other than referring to that statute, plaintiff's amended complaint provides no notice to defendants of what her ASFA claim is or the grounds upon which that claim rests. Accordingly, the branch of the City defendants' motion seeking dismissal of plaintiff's ASFA claim is granted and that claim is dismissed in its entirety without prejudice.

Similarly, other than stating that she is asserting claims for malicious prosecution and intentional infliction of emotional distress, plaintiff fails to set forth any factual allegations in support of those claims. Accordingly, the branch of the Mercy defendants' motion seeking dismissal of plaintiff's malicious prosecution and intentional infliction of emotional distress claims is granted and those claims are dismissed in their entirety without prejudice.

### 5. Legal Malpractice Claim

To the extent plaintiff's amended complaint can be read to state a legal malpractice claim against Galvin or Altman, plaintiff lacks standing to assert such a claim individually against her children's law guardians "because she is a third party who was not in privity with the Law Guardian[s]," <u>Bluntt v. O'Connor</u>, 291 A.D.2d 106, 114, 737 N.Y.S.2d 471 (4th Dept. 2002); <u>see also</u> <u>Drummond v. Drummond</u>, 291 A.D.2d 368, 369, 737 N.Y.S.2d 628 (2d Dept. 2002)

38

(rejecting the plaintiff's legal malpractice claim against her child's law guardian since the plaintiff did not have an attorney-client relationship with the law guardian), and she has not sufficiently pled "fraud, collusion, malicious acts or other special circumstances," Bluntt, 291 A.D.2d at 114, 737 N.Y.S.2d 471, with respect to the law guardians' representation of her children in the Family Court proceedings. Accordingly, the branch of Galvin's motion seeking dismissal of plaintiff's legal malpractice claim against her is granted and that claim is dismissed with prejudice as against Galvin and Altman.[21]

C.    Leave to Amend

Plaintiff requests leave to amend her complaint a second time to cure any deficiencies found in her complaint.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991)). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

---

[21]  In light of this determination, it is unnecessary to consider Galvin's remaining contentions seeking dismissal of any legal malpractice claim against her.

Since, *inter alia*, this is at least the second action[22] commenced by plaintiff based upon similar facts and issues; plaintiff has re-pleaded legal theories that were previously dismissed by this Court without curing the deficiencies noted by the Court; many of plaintiff's claims are time-barred; plaintiff has already filed one (1) amended complaint in this action; and plaintiff has failed to identify with sufficient specificity any facts that would "save" her amended complaint in her opposition to defendants' respective motions, see, e.g. Arnold v. KPMG LLP, 334 Fed. Appx. 349, 352-3 (2d Cir. June 1, 2009), cert. denied, 130 S.Ct. 503, 175 L.Ed.2d 348 (2009), her application for leave to amend her complaint a second time is denied.

III.     Conclusion

For the reasons stated herein, defendants' respective motions to dismiss the amended complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure are granted and the amended complaint is dismissed in its entirety. The Clerk of the Court shall enter judgment in favor of defendants and close this case.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 29, 2011
        Central Islip, N.Y.

---

[22] Plaintiff has also filed at least one (1) action in the United States District Court for the Southern District of New York challenging, *inter alia*, her involuntary confinement.